[No. D007565. Fourth Dist., Div. One. Aug. 30, 1989.]

JOHN J. BIANCHI, Plaintiff and Respondent, v.
CITY OF SAN DIEGO et al., Defendants and Appellants.

**COUNSEL**

John W. Witt, City Attorney, Ronald L. Johnson, Assistant City Attorney, Eugene P. Gordon, Chief Deputy City Attorney, and Steven R. Gustavson, Deputy City Attorney, for Defendants and Appellants.

Thistle & Krinsky and Patrick J. Thistle for Plaintiff and Respondent.

**OPINION**

**FROEHLICH, J.**—City of San Diego (City) appeals from a judgment granting John J. Bianchi's petition for a writ of mandamus. The judgment ordered the City and the San Diego City Retirement Board of Administration (Retirement Board) to grant Bianchi's application for industrial disability retirement benefits. We conclude the trial court erred when it accorded collateral estoppel effect to the prior Workers' Compensation Appeals Board (WCAB) award, and accordingly, we reverse the judgment.

1. *Factual Background*

Bianchi was employed by the San Diego Police Department commencing in March of 1972. During the course of his employment, he allegedly suffered orthopedic and psychiatric injuries, and sought workers' compensation benefits, filing two separate applications. Bianchi's first application (case No. 83 SD 76108) claimed he suffered a continuous-trauma injury to his psyche, arising out of and occurring in the course of his employment from March 1972 to November 29, 1982. In his second application (case No. 83 SD 76109), Bianchi claimed he suffered orthopedic and psychiatric injuries as the result of a specific incident on November 29, 1982, when he was involved in an altercation while arresting a burglary suspect. He claimed orthopedic injuries to his right hand, jaw and lower back.

The findings and awards on both applications, which had been consolidated for hearing and decision, were issued by the WCAB judge on December 18, 1985. On Bianchi's first application (the continuous-trauma psychiatric injury), the judge ruled Bianchi did not sustain a continuous-trauma injury to his psyche arising out of his employment from March 1972 to November 29, 1982. On the second application (the specific-trauma claim), however, the judge found Bianchi had sustained compensable work-related injuries arising out of the November 29, 1982, incident. The injuries found to be work related were injuries to Bianchi's head, back and right hand, together with an associated "intermittent minimal to slight depressive disorder." On the specific-trauma claim, the WCAB judge found Bianchi had suffered a permanent disability of 12¾ percent, and awarded Bianchi $2,887.50, together with reimbursement of or payment for certain medical expenses.

Bianchi subsequently applied to the Retirement Board for industrial disability retirement, claiming he was permanently incapacitated from performing his job as the result of his orthopedic and psychiatric injuries. At the Retirement Board hearing the parties stipulated that Bianchi was permanently incapacitated. However, the City disputed that the psychiatric

condition which incapacitated Bianchi was industrially caused. After hearing evidence regarding the nature of Bianchi's disabilities, both orthopedic and psychiatric, and evidence concerning the causes of each of those sets of disabilities, the Retirement Board denied Bianchi's claim that the disabilities permanently incapacitating Bianchi were industrially caused. Specifically, the Retirement Board concluded that Bianchi's orthopedic injuries, although work related, did *not* incapacitate Bianchi from performing his job duties. The Retirement Board further found Bianchi suffered from psychiatric disabilities which *did* permanently incapacitate him, but concluded the incapacitating psychiatric disabilities[1] were not the result of his employment as a police officer, but were instead the result of a combination of nonwork-related stresses. Accordingly, the Retirement Board denied Bianchi's application for industrial disability retirement.

Bianchi thereafter petitioned for a writ of mandate to compel the Retirement Board to grant his application for industrial disability retirement. He contended the WCAB award in the specific-trauma claim, which found some component of his psychiatric disability to be work related, collaterally estopped the City from litigating whether Bianchi's psychiatric problems were work related. The superior court agreed with Bianchi's contention and issued its writ of mandate to compel the Retirement Board to grant Bianchi's application. This appeal followed.

2. *The Superior Court Erroneously Granted Collateral Estoppel Effect to the WCAB Award Because the Issues and Parties Were Not Identical*

The sole issue is whether the superior court correctly granted collateral estoppel effect to the WCAB award. ■ A party may be collaterally estopped from relitigating a previously adjudicated issue if (1) the issue previously and necessarily adjudicated is identical with the issue sought to be relitigated; (2) the prior adjudication resulted in a final judgment; and (3) the party against whom collateral estoppel is invoked was a party to, or was in privity with a party to, the prior adjudication. (*Producers Dairy Delivery Co.* v. *Sentry Ins. Co.* (1986) 41 Cal.3d 903, 910 [226 Cal.Rptr. 558, 718 P.2d 920].)

Under limited circumstances, a WCAB award to an employee may collaterally estop the employee's retirement board from relitigating issues

---

[1] Specifically, the Retirement Board found Bianchi suffered from multifaceted psychological disorders, including posttraumatic stress disorder, generalized anxiety disorder, alcohol dependence, intermittent explosive disorder, dependent personality disorder, paranoia and extreme psychosocial stress (arising from his divorce, death of a teenage son, family conflicts, alcohol abuse and lack of close familial relationships).

previously decided in the WCAB proceeding. (See, e.g., *French* v. *Rishell* (1953) 40 Cal.2d 477 [254 P.2d 26].) ■ However, the courts have more frequently declined to give WCAB rulings collateral estoppel effect in subsequent retirement board proceedings, either because of a lack of identity of parties (see, e.g., *Preciado* v. *County of Ventura* (1982) 143 Cal.App.3d 783, 789 [192 Cal.Rptr. 253]), or because of differences between the nature of the issues considered during a workers' compensation proceeding and the nature of issues considered by a retirement board proceeding. (See generally, *Reynolds* v. *City of San Carlos* (1981) 126 Cal.App.3d 208, 212-213 [178 Cal.Rptr. 636]; *Harmon* v. *Board of Retirement* (1976) 62 Cal.App.3d 689, 697 [133 Cal.Rptr. 154].)

Based on our review of the facts of this case, we conclude there was neither an identity of issues nor an identity of parties, rendering collateral estoppel inapplicable in this case.

## A. *There Was No Identity of Issues*

The lack of identity of issues is frequently invoked to deny collateral estoppel effect to a prior WCAB ruling in a subsequent retirement board proceeding. Generally, a WCAB proceeding decides whether the employee suffered *any* job-related injury. If that injury results in some permanent residual loss (i.e., loss of normal use of a body part, impaired earning capacity, or some other competitive handicap in the labor market), the WCAB awards the employee a permanent disability rating. (See generally, *State Compensation Ins. Fund* v. *Industrial Acc. Com.* (1963) 59 Cal.2d 45, 52 [27 Cal.Rptr. 702, 377 P.2d 902] [defining meaning of permanent partial disability under workers' compensation law].) Retirement boards, on the other hand, focus on a different issue: whether an employee has suffered an injury or disease of such magnitude and nature that he is incapacitated from substantially performing his job responsibilities. (See generally, *Winn* v. *Board of Pension Commissioners* (1983) 149 Cal.App.3d 532, 539 [197 Cal.Rptr. 111].) Because of the differences in the issues, "[a] finding by the WCAB of permanent disability, which may be partial for the purposes of workers' compensation, does not bind the retirement board on the issue of the employee's incapacity to perform his duties." (*Reynolds* v. *City of San Carlos, supra,* 126 Cal.App.3d at p. 215.)

Here, the limited issue litigated in the WCAB specific-trauma claim was whether Bianchi suffered any permanent disability as a result of work-related orthopedic and/or psychiatric injuries. The WCAB found work-related orthopedic injuries had been incurred, and also found some minor (i.e., minimal to slight) injury to Bianchi's psyche, denominated as a "depressive disorder," which was determined to be intermittent. The combined impact

of the entire set of injuries, both orthopedic and psychiatric, supported a permanent *partial* disability rating of only 12¾ percent.[2]

The Retirement Board considered a significantly different issue: whether Bianchi was incapable of substantially performing his duties, and if so, whether the set of injuries or disabilities which caused the incapacity resulted from Bianchi's employment. The Retirement Board first concluded that Bianchi's orthopedic injuries, although work related, did not incapacitate him from performing his duties. Such a conclusion was entirely supportable. (*Reynolds* v. *City of San Carlos, supra,* 126 Cal.App.3d at p. 215.)

The Retirement Board then considered whether the set of psychiatric problems which *did* incapacitate Bianchi was work-related. At the Retirement Board hearings, Bianchi did not attribute the entire set of incapacitating psychiatric disabilities to the specific, November 29, 1982, incident. To the contrary, Bianchi's counsel argued (and his expert doctor testified) that the incapacitating psychiatric disorders were principally the product of *long-term* job-related stress and strain.[3] The Retirement Board, after considering the opinions of numerous expert doctors, concluded that the psychiatric disabilities which in fact incapacitated Bianchi were not work related, but instead had their genesis in non-job-related stresses.

---

[2] Importantly, the same judge considered and rejected Bianchi's claim that he had also suffered a work-related continuous-trauma psychiatric injury. Moreover, the work-related injuries did not result in an award of permanent *total* disability.

[3] Although Bianchi's application for industrial disability retirement attributed his psychiatric disorders exclusively to the November 29 work-related incident, Bianchi's presentation to the Retirement Board clearly shows his primary contention was that his disabilities were the product of the stresses he underwent over the long term. Bianchi's expert testified, for example, that: "My belief in Mr. Bianchi's case is that the stress and strain . . . he encountered *during the course of his career* as a police officer created or caused the depressive reaction." (Italics added.) Indeed, during cross-examination counsel for the City presented the expert with the two WCAB rulings, which stated that Bianchi's psychiatric condition was the result of the November 29, 1982, injury rather than the result of the long-term continuous trauma, and asked the expert if he agreed with that assessment. The expert stated: "Well, my opinion throughout the years as stated in my reports is different than that, so I would disagree with the [WCAB] judge . . . I would not be in agreement with [the WCAB judge."

During closing argument, Bianchi's counsel reinforced their contention that the disabling psychiatric problems were based on long-term job-related stresses and traumas: "The question becomes, did the job have anything to do with it [the psychiatric disability]? Did the environment have anything to do with it? Aside from my legal argument [that the WCAB specific trauma award is conclusive] . . . [y]ou can't take away from the fact that Mr. Bianchi had a number of years on the police department and was affected by what he saw, what he observed, what he was involved in, what engagements he had with other persons in the occupation. And he singularly—he was affected by it."

Thus, the evidence and arguments at the Retirement Board clearly focused on whether Bianchi's incapacitating disabilities resulted from continuous and long-term job-related stresses.

Thus, the "issue" decided by the WCAB award was not identical to the "issue" litigated before the Retirement Board: (1) the WCAB dealt with work-relatedness of a disorder associated with a *single* incident, whereas the Retirement Board dealt with the work-relatedness of a set of disorders produced by *long-term* stresses; (2) the WCAB dealt with work-relatedness of a disorder which (even when combined with orthopedic injuries) did *not* totally disable Bianchi, whereas the Retirement Board dealt with the work-relatedness of exclusively psychiatric disorders which *totally* incapacitated Bianchi; and (3) the WCAB award found work-relatedness of a disorder denominated as "depression" (and described as both "intermittent" and "minimal"), whereas the Retirement Board addressed a different set of psychiatric disorders, variously described as "severe," "chronic" or "extreme." Because there is no "identity of issues," collateral estoppel is inapplicable.[4]

Bianchi relies heavily on *Greatorex* v. *Board of Administration* (1979) 91 Cal.App.3d 54 [154 Cal.Rptr. 37] to support the application of collateral estoppel. We find *Greatorex* to be factually inapposite. In *Greatorex,* a firefighter obtained a WCAB award for a heart attack which the parties stipulated was work related. The *Greatorex* court held the work-relatedness of the disability could not be relitigated in later retirement board proceedings, and applied collateral estoppel to require the granting of the employee's service-connected disability retirement. In *Greatorex,* the *injury* (i.e., the heart attack) which resulted in the WCAB award was *identical* to the injury which incapacitated the employee for retirement purposes. Here, however, the psychiatric injuries are not identical, and hence the work-relatedness finding of the WCAB does not collaterally estop the City from contesting whether a *different* set of psychiatric injuries (the source of and reason for Bianchi's incapacity to perform his job) was work related.

B. *The Parties to the WCAB Proceeding Differed From the Parties to the Retirement Board Proceeding*

Even if the injuries litigated had been identical, collateral estoppel would only be appropriate if the Retirement Board were a party, or in privity with

---

[4] That the injuries considered by the WCAB were different from the injuries considered by the Retirement Board finds additional confirmation in the twin rulings by the WCAB. The WCAB specifically rejected Bianchi's claim that he suffered psychiatric injury based on long-term job stress and strain; however, it is precisely the psychiatric disorders resulting from long-term trauma which the Retirement Board addressed. Further, the "work-related" psychiatric injuries found by the WCAB did *not* result in a *total* disability award, but were instead amalgamated with other injuries for a partial award, whereas the psychiatric injuries considered by the Retirement Board were *totally* disabling. These differences thus convince us that the issues/injuries litigated in the WCAB proceeding were not identical to the issues/injuries litigated in the Retirement Board proceeding, rendering collateral estoppel inapplicable.

a party, to the WCAB proceeding. Absent such identity of parties, collateral estoppel is inapplicable. (*Producers Dairy Delivery Co.* v. *Sentry Ins. Co., supra,* 41 Cal.3d at p. 910.)

Bianchi argues the *Greatorex* court conclusively decided the requisite privity exists between the City and the Retirement Board. While *Greatorex* contains such language,[5] it is unclear whether the parties actually contested the existence of privity. More importantly, the *Greatorex* court reached its conclusion based solely on *French* v. *Rishell, supra,* 40 Cal.2d 477, and without the benefit of the subsequent analysis contained in *Traub* v. *Board of Retirement* (1983) 34 Cal.3d 793 [195 Cal.Rptr. 681, 670 P.2d 335]. In light of the *Traub* analysis, it is appropriate to reevaluate the *Greatorex* conclusion that the requisite privity exists between the City and the Retirement Board.

In *Traub,* the California Supreme Court refused to apply collateral estoppel effect of a WCAB award, entered against the county for an injury sustained by a county employee, in the employee's subsequent application for disability retirement based on the same injury. The *Traub* court reasoned that the county retirement board did not act as a mere agent of the county,[6] but instead was an independent administrator of an entity distinct and separate from the county. In reaching this conclusion, the *Traub* court noted the retirement system was an entity distinct and independent from the county; that the retirement board was an independent administrator for the system; that membership in the retirement system was not limited to county employees, but instead included noncounty employees as participants; and that the system was funded not merely by the county (as employer), but also by contributions from participating noncounty employers and from participating county and noncounty employees. Moreover, the *Traub* court emphasized that because the retirement system was funded on an actuarial and contributory basis, any adjudication of a claim for benefits had an adverse economic impact on the employee-members, as well as on the county and noncounty employers. (34 Cal.3d at p. 798.) The *Traub* court therefore reasoned that because of "[t]he distinctive identity, constitu-

---

[5] The *Greatorex* court peremptorily declared: "The parties in the two actions are the same since the city, as employer, was the real party in interest and appeared in both proceedings [citing *French* v. *Rishell, supra,* 40 Cal.2d 477, 482]." (*Greatorex, supra,* 91 Cal.App.3d at p. 58.)

[6] Where the retirement board is merely the agent for the employer in administering the employer's retirement fund, and has no independent existence, powers or responsibilities, a WCAB award against the employer may properly be accorded collateral estoppel effect against the retirement board. (*French* v. *Rishell, supra,* 40 Cal.2d at p. 482.) *Traub* distinguished *French,* however, because *Traub* concluded the retirement board in its case was not a mere agent or subdivision of the employer. (*Traub* v. *Board of Retirement, supra,* 34 Cal.3d at p. 798.)

ency and interests of a county retirement system . . ." (*id.* at p. 799), a WCAB ruling would not have collateral estoppel effect because there was no privity.[7]

These same factors demonstrate that the Retirement Board here is not in privity with the City. The retirement system is established as an independent entity; all funds for the system are required to be segregated from city funds, placed in a separate trust fund under the exclusive control of the Retirement Board, and may only be used for retirement system purposes. (San Diego City Charter, art. IX, §§ 141, 145.) The Retirement Board acts as an independent administrator empowered to conduct actuarial studies to determine conclusively the amounts of contributions required of the City and participating employees.[8] The board has the sole authority to determine the rights to benefits from the system, and to control the administration of and investments for the fund.[9] The Retirement Board has twelve members, the majority of whom are not City officers: three represent active members of the retirement system, one represents retired members of the system, one is an officer of a local bank, and three are independent citizens of the City.[10]

Most significantly, the retirement system is a contributory system, based on actuarial tables established by the Retirement Board, with contributions to fund the system paid equally by the City *and its participating employees.*[11] Indeed, the system also encompasses noncity entities and employees. The San Diego Unified Port District, a special entity separate and distinct from the City (see Harb. & Nav. Code, appen. 1, §§ 1-88), and its employees participate in and contribute to the system on an actuarial basis. Thus, as in

---

[7] The *Traub* court cited *Preciado* v. *County of Ventura, supra,* 143 Cal.App.3d 783, with approval. (*Traub* v. *Board of Retirement, supra,* at p. 799.) In *Preciado,* the court similarly concluded there was no collateral estoppel effect of a WCAB ruling against a county-employer in a subsequent county retirement board proceeding. *Preciado* found no privity existed because of a number of differences (in addition to the differences in the constituency between the county and the retirement system) between the two entities, as follows: (1) management was vested in a retirement board, the majority of whom were not county officials, but were instead drawn from the membership ranks of the retirement system and from the local community; (2) the board was empowered to make periodic actuarial studies and adjust the rates of employee and employer contributions, which the county was obliged to adopt; and (3) the board was empowered to hold hearings and to adjudicate claims for compensation independent of county control. (*Id.* at pp. 787-789.) For these reasons, the *Preciado* court concluded that, while the county may have been represented at the WCAB hearing, the distinct and substantially autonomous retirement board was not represented and could not be collaterally estopped. (*Id.* at p. 789.)

[8] San Diego City Charter, article IX, sections 142, 143; San Diego Municipal Code sections 24.0901, 24.0801.

[9] San Diego City Charter, article IX, section 144.

[10] *Ibid.*

[11] San Diego City Charter, article IX, section 143.

*Traub* and *Preciado,* any claim for benefits from the retirement system economically impacts not merely the City (the only party impacted by the WCAB award), but also imposes an adverse economic impact on the contributing members of the system (i.e., both City employees and port district employees) as well as on the treasury of the port district. Accordingly, while the City's economic interests may have been represented at the WCAB hearing, the economic interests of the retirement system participants were not represented; hence the parties to the WCAB were not identical to or in privity with the parties to the Retirement Board hearings.

## DISPOSITION

For the foregoing reasons, the judgment granting Bianchi's writ of mandate, insofar as it is premised on the collateral estoppel effect of the WCAB ruling, is reversed.[12] The matter is remanded for proceedings not inconsistent with this opinion.

Kremer, P. J., and Benke, J., concurred.

Respondent's petition for review by the Supreme Court was denied November 15, 1989.

---

[12] Nothing in this opinion should be construed as precluding the trial court, on remand, from reconsidering whether to grant Bianchi's petition for writ of mandate for reasons other than the collateral estoppel impact of the WCAB award.