Rockingham
No. 92-370

JUDITH R. DAY

v.

NEW HAMPSHIRE RETIREMENT SYSTEM

December 23, 1993

*Nixon, Hall and Hess, P.A.*, of Manchester (*Nicholas D. Brown* on the brief and orally), for the plaintiff.

*Sheehan, Phinney, Bass & Green, P.A.*, of Manchester (*Claudia C. Damon* and *Robert R. Lucic* on the brief, and *Mr. Lucic* orally), for the defendant.

HORTON, J.   The defendant, New Hampshire Retirement System (retirement system), appeals from an order of the Superior Court (*O'Neil*, J.) requiring it to pay accidental disability benefits to the plaintiff, Judith R. Day. The retirement system argues that the trial court erred in ruling that it was collaterally estopped from considering the cause, extent, and permanency of Day's injuries, notwithstanding that these issues had been adjudicated by the New Hampshire Department of Labor in a workers' compensation case between Mrs. Day and her employer, the New Hampshire Department of Transportation. We hold that because the retirement system and the department of transportation are not in privity, collateral estoppel is inapplicable. Accordingly, we reverse.

Judith Day was employed by the department of transportation as a toll attendant and was a group I member of the retirement system. In September 1987, she began to experience pain in her hands and wrists. She was diagnosed as having work-related tendinitis in both wrists, as well as early signs of carpal tunnel syndrome. Day continued to work until September 1989, when she began to receive workers' compensation benefits for temporary total disability. Day later received medical treatment from Drs. Robert Swiggett and Benjamin Hoffman, and in February 1990, Dr. Swiggett performed right carpal tunnel release surgery.

In June 1990, Day applied, pursuant to RSA 100-A:6, I(c) (1990), for accidental disability retirement benefits from the retirement system. At the request of the retirement system, Day was examined by Dr. Leonard D. Emond, who was unable to conclude that her injury was work-related, or that her incapacity was total and permanent. Relying heavily on Dr. Emond's report, the board of trustees of the retirement system denied Day's application for disability retirement benefits finding that she had failed to establish the existence of the statutory criteria; namely, that her injury was work-related, and that she was totally and permanently incapacitated from further performance of her duties. RSA 100-A:6, I(c). Pursuant to rules promulgated by the board, Day petitioned for a hearing.

Before the retirement system hearing was conducted, however, the department of transportation terminated Day's employment and

filed a petition with the department of labor seeking to terminate her workers' compensation benefits. In an April 9, 1991, decision, the department of labor ordered that temporary total disability benefits continue, thus implicitly finding that the injury was work-related. Day's retirement benefits hearing was held in May 1991, and in a June 26, 1991, decision, the board denied accidental disability retirement benefits, finding that Day again failed to prove the statutory criteria.

Because RSA chapter 100-A does not contain a provision for judicial review, Day filed a petition in superior court seeking review by way of a writ of certiorari. *Hardy v. State*, 122 N.H. 587, 589, 448 A.2d 382, 384 (1982). The trial court granted the writ of certiorari and found that the retirement system and the department of labor were in "privity," and therefore that the retirement system was collaterally estopped from relitigating the issues of causation, permanency, and total incapacity, which the court found had already been adjudicated in the workers' compensation proceeding before the department of labor. The retirement system appealed.

The retirement system argues that it is not in privity with the department of labor, and thus the trial court erred in applying the doctrine of collateral estoppel. As a preliminary matter we note that the retirement system mischaracterizes the issue as whether it stands in privity with the department of *labor*. Although the department of labor was the *forum* for the workers' compensation hearing, it was the department of *transportation* that was the *party* to the earlier proceeding. Accordingly, our inquiry is whether the retirement system and the department of transportation are in privity. We hold that they are not.

■■ The elements of collateral estoppel are well-established: the issue subject to estoppel must be identical in each action and the finding must have been essential to the first judgment; the party to be estopped must have appeared in the first action or have been in privity with someone who did, and must have had a full and fair opportunity to litigate the issue; and the first action must have resolved the issue finally on the merits. *Daigle v. City of Portsmouth*, 129 N.H. 561, 570, 534 A.2d 689, 693 (1987); RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1980); *cf. Ainsworth v. Claremont*, 108 N.H. 55, 56, 226 A.2d 867, 869 (1967) (collataral estoppel only applicable to those matters "directly in issue"). Findings by administrative agencies may be given preclusive effect. *See LaBonte v. Nat'l Gypsum Co.*, 110 N.H. 314, 316, 269 A.2d 634, 636 (1970). With respect to the privity requirement, we have noted that a finding of privity between a

party and a non-party is tantamount to "virtual representation" and "substantial identity." *Daigle v. City of Portsmouth*, 129 N.H. at 571, 534 A.2d at 694 (quotations omitted). Further, "[t]hese conclusory phrases imply not a formal, but a functional, relationship, in which, at a minimum, the interests of the non-party were in fact represented and protected in the [prior] litigation." *Id.* (quotations omitted). Application of these principles, depending on the facts of a particular case, may lead to the conclusion that the State and its agencies are in privity with each other, *see* 50 C.J.S. *Judgments* § 796 (1947), but in this case we hold that although the retirement system has some attributes of the State, it is not in privity with the State or any of its executive agencies.

The issue before us is one of first impression, and we look to other jurisdictions for guidance. Our review of caselaw suggests that this issue has been rigorously examined only in California, where a court recently explained:

> "Under limited circumstances, a [workers' compensation appeals board (WCAB)] award to an employee may collaterally estop the employee's retirement board from relitigating issues previously decided in the WCAB proceeding. However, the courts have more frequently declined to give WCAB rulings collateral estoppel effect in subsequent retirement board proceedings, either because of a lack of identity of parties or [a lack of identity of issues]."

*Bianchi v. City of San Diego*, 214 Cal. App. 3d 563, 566–67, 262 Cal. Rptr. 566, 568 (1989) (citations omitted).

The California Supreme Court first examined this issue in *French v. Rishell*, 40 Cal. 2d 477, 254 P.2d 26 (1953), where it found privity. In *French*, the widow of an Oakland firefighter had successfully established in a workers' compensation proceeding that her husband's death was work-related. She subsequently sought pension benefits under the same theory from the firemen's relief and pension fund that had been established under the city charter. After the pension board denied her claim for benefits, an intermediate appellate court issued a writ of mandamus compelling payment. On appeal, the supreme court affirmed, ruling that under the city charter the pension board was "an agent of the city" and was bound by the workers' compensation decision because the city was bound. *French*, 40 Cal. 2d at 482, 254 P.2d at 29.

In *Traub v. Board of Retirement*, 34 Cal. 3d 793, 670 P.2d 335, 195 Cal. Rptr. 681 (1983), the California Supreme Court revisited *French* and the privity issue, and this time, under somewhat different facts,

held that privity was not established. In *Traub*, a Los Angeles County policeman was awarded workers' compensation benefits for a work-related psychological disability. In a later proceeding before the Los Angeles County Employees Retirement Association, however, he was denied service-connected disability benefits. Relying on *French*, the claimant sought a writ of mandamus to compel payment on the theory that the retirement board was in privity with the county and estopped from relitigating whether his disability was "service-connected." Affirming the denial of the writ, the supreme court distinguished *French* by noting that the existence of privity in that case was based on the particular finding that "under that city's charter, 'the pension board acts as an agent of the city.'" *Id.* at 798, 670 P.2d at 338, 195 Cal. Rptr. at 684 (quoting *French*, 40 Cal. 2d at 482, 254 P.2d at 29). In contrast, the court noted, the county retirement board in *Traub* was not an agent of the county, but instead an administrator of an independent entity established pursuant to state law. Further, the constituency of the retirement system was not limited to county employees, but also included employees from other political subdivisions within the county. Because the system was funded by contributions from all employees and employers, the court reasoned that any disbursement from the fund would affect not only the county, but also the other participating subdivisions and all the participating employees in the system. Based on the "distinctive identity, constituency and interests" of the retirement system, the court held that there was no privity between it and the county. *Id.* at 798–99, 670 P.2d at 338, 195 Cal. Rptr. at 684.

Following *Traub*, the California Court of Appeal in *Bianchi* expanded on the *Traub* factors in finding a lack of privity between a statutorily-created pension system and the City of San Diego. Of particular importance to the *Bianchi* court were the establishment of the system as an independent entity; the segregation of pension funds from city funds; the authority of the board to conduct actuarial studies and to adjust contribution amounts according to those studies; the authority of the board to control the investments and administration of the pension funds; and the fact that the majority of the members of the board were not city officers. *Bianchi*, 214 Cal. App. 3d at 571, 262 Cal. Rptr. at 571. Most importantly, though, the *Bianchi* court emphasized that the pension system was a contributory one in which employers and employees alike were required to contribute. Thus, the court chided: "[W]hile the City's economic interests may have been represented at the WCAB hearing, the economic interests of the retirement system participants were not represented . . . ." *Id.* at 572, 262 Cal. Rptr. at 571.

We find *Traub* and its progeny to be well-reasoned and to present a sound model for determining when privity between a governmental entity and a pension board exists. The New Hampshire Retirement System contains many of the hallmarks that weigh against privity, and we are convinced, on balance, that privity does not exist. Our conclusion is consistent with our decision in *New Hampshire Retirement System v. Sununu*, 126 N.H. 104, 489 A.2d 615 (1985), where we held that although established by statute, the retirement system is an independent entity rather than an executive department or agency. *Id.* at 110, 489 A.2d at 620. In *Sununu*, we also recognized that as overseers of a trust, the board of trustees, unlike an executive agency, owes a fiduciary obligation only to the retirement system's members and beneficiaries. *Id.* at 109, 489 A.2d at 619. In contrast, an executive agency owes a duty to all the citizens of the State.

Many non-privity hallmarks also appear in RSA chapter 100-A, which established the retirement system. First, the statute makes clear that the retirement system is a qualified pension trust within the meaning of the United States Internal Revenue Code, and as such holds all funds in trust for its members. RSA 100-A:2 (Supp. 1992). The retirement system is administered by a thirteen-member board, including two teachers, two permanent police officers, two permanent firefighters, and two employees. RSA 100-A:14, I (1990). Membership is not limited to employees of the State, but also may include employees of counties, cities, towns, school districts, school administrative units, and other political subdivisions. RSA 100-A:20, I (1990). The retirement system is a contributory one to which both employers and employees are required to contribute. RSA 100-A:16 (1990 & Supp. 1992). The contribution rate for employees is currently fixed by statute, but the employer contribution rate is periodically adjusted by the board in response to biennial actuary reports on the assets and liabilities of the fund. *Id.* The State Treasurer has historically been the custodian of retirement system funds, but the board retains the power to appoint whomever it chooses to hold that position. RSA 100-A:15, II(c) (Supp. 1992). Even though the State Treasurer may serve as custodian, the funds are not part of the State's general treasury and may only be used for providing retirement benefits. N.H. CONST. pt. I, art. 36-a. The board has the power to invest the funds in accordance with the limitations placed upon any domestic life insurance company, RSA 100-A:15, I (Supp. 1992), and may charge the fund for the advice of investment advisors and actuaries whom it is empowered to employ. RSA 100-A:15, II(b)

(Supp. 1992). The board may always engage legal counsel for investment, federal, and tax matters and, with the approval of the attorney general, may engage counsel for all other matters. RSA 100-A:15, VIII (Supp. 1992).

■ We hold that because of the distinct identity, constituency and interests of the retirement system, it is not in privity with executive agencies of the State, including the department of transportation. We place great weight on the fact that the retirement system is a contributory one and that the impact of disbursements may be felt by all participating employers and employees in the form of increased contribution rates and the threat to the solvency of the fund. Thus, even assuming that the State's interests were well-represented in the department of labor proceedings, the same cannot be said of the interests of the members of the retirement system, nor of the many contributing employers other than the State. Because the interests of these other parties were unrepresented before the department of labor, we hold that application of collateral estoppel to the retirement system was error.

Day appears to argue that even if collateral estoppel was inapplicable, the retirement system is *statutorily* estopped from relitigating the issue of causation where the department of labor has determined that an injury was the result of gradual degeneration or repeated trauma. In support of this argument, she points to RSA 100-A:6, I(c), which enumerates the conditions for receipt of disability retirement benefits by a group I member:

> "[A group I] member who has been totally and permanently incapacitated for duty as the natural and proximate result of an accident occurring while in the actual performance of duty at some definite time and place, or as the natural and proximate result of repeated trauma or gradual degeneration occurring while in the actual performance of duty . . . *and found to be compensable by the commissioner of labor pursuant to RSA 281:37*, . . . may be retired by the board of trustees on an accidental disability retirement allowance; provided that he is found to be mentally or physically incapacitated for the further performance of duty and that such incapacity is likely to be permanent."

We need not decide this issue, however, because even assuming, *arguendo*, that RSA 100-A:6, I(c) foreclosed the board from relitigating the issue of *causation*, there is no contention — nor could one be made — that the statute also foreclosed the board from considering

the *extent* and *permanency* of Day's incapacity. On precisely these points, the board denied disability benefits on the independent grounds that Day failed to prove that her incapacity was total and permanent.

Because the trial court's order rested on application of collateral estoppel, the court did not consider whether there was a proper basis for these findings by the board. Although we hold that the trial court should have reached that issue, remand is not necessary because we are in a proper position to review directly the board's findings. This court has concurrent original jurisdiction with the superior court to grant writs of certiorari, *Bothwick v. State,* 119 N.H. 583, 590, 406 A.2d 462, 467 (1979), and thus, Day could have sought a writ of certiorari directly from us. We also note that the issue of whether there was sufficient evidentiary support for the board's findings was raised in the notice of appeal and briefed by the retirement system. Finally, we note that we have before us the same documentary record that would be available to the superior court. *Cf. Masse v. Commercial Union Ins. Co.,* 136 N.H. 628, 632, 620 A.2d 1041, 1044 (1993). In light of these considerations, we review the board's findings directly.

We must uphold the decision of the board unless it was so lacking in reason as to be arbitrary, unreasonable, or capricious, or to constitute an abuse of discretion. *Hardy,* 122 N.H. at 589–90, 448 A.2d at 384. Thus, it is not our function to make *de novo* findings or to substitute our judgment for that of the board. *Id.* at 590, 448 A.2d at 384. Applying this standard, we find that although there was competing evidence on extent and permanency, the board's findings were supported by competent medical evidence.

It is well-accepted that the board may adopt the view propounded by one expert and reject the view of another expert. *Id.* at 590, 448 A.2d at 384. The board adopted the views of Dr. Leonard Emond, who examined Day at the request of the retirement system. Notwithstanding diagnoses to the contrary, Dr. Emond concluded:

"I do not feel that there is sufficient evidence and objective symptomatology to warrant any type of diagnosis at this point. The prickly feeling on the dorsom [*sic*] of her fingers is not a symptom which is associated with carpal tunnel syndrome . . . . The absence of a diagnosis would lead me to agree that she has a chronic pain syndrome, which does not appear, at this time, to have an organic basis . . . . *I am not able to certify that Mrs. Day's present complaints and al-*

*leged symptomatology is disabling enough to consider her totally incapacitated from the performance of her duties,* or that her complaints are the natural and proximate result of an accident occurring while performing her duties. *In the absence of objective symptomatology, it is impossible to qualify her present complaints as permanent."*

(Emphasis added.) We need look no further in order to hold that the board's findings on extent and permanency and its denial of disability benefits were not arbitrary, capricious, or an abuse of discretion. *Hardy,* 122 N.H. at 589–90, 448 A.2d at 384.

In conclusion, we reverse the trial court's grant of the writ of certiorari and affirm the board's decision.

*Reversed.*

All concurred.