[No. A015042. First Dist., Div. One. Nov. 21, 1984.]

NATHANIEL KIMBROUGH, Plaintiff and Appellant, v.
POLICE AND FIRE RETIREMENT SYSTEM OF
THE CITY OF OAKLAND, Defendant and Respondent.

**COUNSEL**

Richard A. Hellesto for Plaintiff and Appellant.

Richard E. Winnie, City Attorney, Peter K. Finck, Deputy City Attorney, Sharon D. Bank and Tessie Belue for Defendant and Respondent.

**OPINION**

**HOLMDAHL, J.**—This is an appeal from a judgment denying appellant's petition for a writ of mandate seeking to overturn an adverse decision by the Police and Fire Retirement Board of the City of Oakland.

The judgment is affirmed.

### Underlying Facts[1]

Appellant Nathaniel Kimbrough was hired as a police officer by the City of Oakland in 1972. During his tenure with the police department, he apparently performed his duties well and received positive evaluations of his conduct.

On several occasions he was physically injured while on duty. These physical injuries form part of the basis for his later application to be retired because of service-connected disabilities. Another basis for his request relates to injuries of a psychiatric nature sustained in connection with his duties as a police officer. It appears that appellant, who is black, felt ostracized by white officers and that he found himself in confrontations with other officers.

Another factor had to do with appellant's participation in a law enforcement response to a complaint about noisy members of the Hell's Angels. One of the club members took appellant's photograph. This action upset him, and he tried unsuccessfully to take back the photograph. A fight ensued and several officers were injured. Other officers blamed appellant for this incident. These events contributed to appellant's intense fears about his safety and that of his family, as well as to his psychological difficulties.

The facts that appellant's photograph was published in a Black Panther newspaper and that it identified him as a " 'mad dog officer' " also contributed to his psychological state.

### Facts and Procedural History

On August 15, 1979, appellant filed three applications for adjudication of claim with the Workers' Compensation Appeals Board (hereafter, WCAB), based on certain physical injuries he had sustained. He later filed an additional application with the WCAB alleging injuries to his cardiovascular system and to his psyche and nervous system.

On January 12, 1981, the workers' compensation judge made findings of fact including the following:

---

[1]These details, based largely upon appellant's evidence, are provided for background purposes. There is no dispute that appellant suffered from psychological as well as physical problems. The dispute concerns whether his disability was service-connected.

"1) During the period herein, it is alleged that Nathaniel Kimbrough sustained injury of a psychiatric character, arising out of and occurring in the course of the employment.

"2) The injury has caused temporary total disability for the period 12/8/79 to the present and continuing,

"3) Further medical treatment will be required to cure and relieve from the effects of the injury."[2]

On March 9, 1981, appellant had applied to respondent Police and Fire Retirement System of the City of Oakland (hereafter, respondent System) for service-connected disability retirement. His application was heard on April 29, 1981, by its Police and Fire Retirement Board (hereafter, Board) and, thereafter, the Board voted to retire him for nonservice-connected disability. The Board's minutes state that "it appears . . . that Nathaniel H. Kimbrough is incapacitated for the performance of duty in the Oakland Police Department because of injury to psyche, hypertension, back injury and right knee [sic]." Except for that statement, the Board made no formal findings of fact and conclusions of law.

Appellant filed with the Alameda County Superior Court his petition for writ of mandate on August 25, 1981. His action sought a determination that the Board erred in denying him service-connected disability benefits. At a later hearing, both sides agreed that the superior court was to apply the independent review test to the record, rather than the substantial evidence test. The record before the trial court consisted of the parties' pleadings and medical reports attached thereto: I.e., the administrative record.

On November 23, 1981, the court issued findings of fact and conclusions of law and a judgment in respondent System's favor. The findings and conclusions are as follows:

"FINDINGS OF FACT

"1. Petitioner was employed by respondent, City of Oakland,[3] as a police officer from 1972 until 1981.

---

[2]The WCAB later amended its findings of fact by striking the word "alleged" in finding No. 1 and replacing it with the word "found."

[3]There are numerous patent ambiguities in the record in references to the City of Oakland, its Police and Fire Retirement System, and the System's Board. It is certain, however, that appellant's applications to WCAB named the City of Oakland as the sole defendant employer and that his petition for writ of mandate named respondent System as the sole defendant.

"2. In May, 1981, petitioner was retired by respondents for nonservice-connected disability retirement.

"3. At the time of the nonservice-connected disability retirement, petitioner was not incapacitated from the performance of the regular duties of a police officer as a result of his on-the-job injuries.

"4. Petitioner is not incapacitated from the performance of duty as a police officer by reason of injuries received in the performance of duty.

"CONCLUSIONS OF LAW

"1. Respondents did not abuse their discretion by denying petitioner's application for service-connected disability retirement.

"2. The weight of the evidence supports respondents' denial of petitioner's application for service-connected disability retirement.

"3. The Petition for Writ of Mandate is denied and the Alternative Writ of Mandate, issued August 26, 1981, is discharged."

Appellant, thereafter, filed this appeal.

*The Appropriate Standard of Review on Appeal*

The parties disagree as to what is the appropriate standard of review to be applied by this court to the proceedings below. Appellant contends it is the independent review standard; respondent System contends it is the substantial evidence standard.

The appropriate standard to be applied here after superior court review of an administrative proceeding depends on what was the appropriate standard of review at the superior court level. That, in turn, depends on the type of rights affected by the administrative proceeding. (See generally, *Moran* v. *Board of Medical Examiners* (1948) 32 Cal.2d 301, 308 [196 P.2d 20]; *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 143 [93 Cal.Rptr. 234, 481 P.2d 242]; *Harmon* v. *Board of Retirement* (1976) 62 Cal.App.3d 689, 691-692 [133 Cal.Rptr. 154].)

If the appropriate superior court standard had been the substantial evidence standard, then the question before this court would be whether the administrative agency's findings were supported by substantial evidence. (*Bixby* v. *Pierno, supra,* 4 Cal.3d 130.)

If, on the other hand, the independent review standard had been appropriately applied by the superior court, then the question before this court would be whether the superior court's findings (and not those of the administrative agency) were supported by substantial evidence. (*Moran* v. *Board of Medical Examiners, supra,* 32 Cal.2d 301.)

■ In the instant case both parties agreed that it was appropriate for the superior court to make an independent review of the evidence. That is consistent with *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28 [112 Cal.Rptr. 805, 520 P.2d 29], which noted that the right to receive a service-connected death allowance affected a fundamental vested right.

Appellant relies on *Strumsky* for the proposition that this court also should apply the independent review standard, but that reliance is misplaced. The issue decided in *Strumsky* was the scope of review at the *superior* court.

Since the superior court standard in the present case was independent review, the appropriate scope of review on appeal is to determine whether that court's findings are supported by substantial evidence. (*Moran* v. *Board of Medical Examiners, supra,* 32 Cal.2d 301.)

*Existence of Substantial Evidence*

■ Appellant contends the evidence was not sufficient to support the court's finding that the injury was not work-related. There was conflicting evidence.

There was evidence that appellant sustained injury to his psyche as well as physical injury as a result of his employment as an Oakland police officer. He points to the reports of Drs. John Kroes, Lipscomb, and William Kroes. However, there was also evidence to the contrary. Respondent System points to letters or reports from Dr. Shev ("[Kimbrough] brought his problems into the job, the job did not aggravate his problems but only allowed him to have the matrix upon which to express his unconscious psychological disturbance into the work situation") and Dr. Livingston (Kimbrough's "condition is due to the fact that he does not want to be a City of Oakland police officer"). This is sufficient evidence to support the superior court's determination.

*Failure of Respondent to Make Formal Findings*

■ Appellant complains of the failure of the Board to make formal findings.

However, inasmuch as the superior court properly applied the standard of independent review and judgment to the evidence before it, the absence of formal findings was of no consequence.

*Effect of WCAB Decision as Res Judicata*

 Appellant contends that the principle of res judicata applies so that the WCAB finding that the injury was work-related must be accepted by the Board. Respondent System, however, opposes application of the res judicata principle on two bases: (1) The WCAB finding that the disability was service-connected was *not* made earlier than the Board's decision that it was *not* service-connected, and (2) respondent System, which was not a defendant in the WCAB proceedings, is not in privity with the City of Oakland, which was the defendant in those proceedings.

As to the first point, respondent System relies on the fact that the original WCAB findings employ the word "alleged." We do not determine this issue, inasmuch as our agreement with respondent System's second point is dispositive of the present appeal.

In a case similar to the present one, involving the widow of an Oakland fireman, the firemen's relief and pension fund, and a decision by the Industrial Accident Commission, the California Supreme Court noted that "[t]he doctrine of res judicata is applicable where the identical issue was decided in a prior case by a final judgment on the merits and the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication." (*French* v. *Rishell* (1953) 40 Cal.2d 477, 479 [254 P.2d 26].) Thus, three requirements exist which must be met in order to give res judicata effect to an earlier decision: (1) identical issue; (2) final judgment on the merits; and, (3) same party or party in privity.

 Directing our attention to the matter of privity, the question is whether the respondent System and its Board are simply agents of the City of Oakland or whether they are entities substantially independent of the city. In *Summerford* v. *Board of Retirement* (1977) 72 Cal.App.3d 128 [139 Cal.Rptr. 814], the court distinguished the Santa Barbara County Employees' Retirement Association from the Oakland City Pension Board as that board existed at the time of *French* v. *Rishell, supra,* 40 Cal.2d 477. The *Summerford* court said:

"The instant case does not involve a city pension board, but rather a county employees' retirement association formed pursuant to the 1937 County Employees' Retirement Act. [Fn. omitted.] Such an association is a contributory system, in which the contribution rate of the members is

subject to adjustment based upon the mortality, service and compensation experience of the members. Thus any adjudication of a claim for benefits may have an economic impact upon the membership as well as on the county treasury (see Gov. Code, § 31453).

"The association is governed by a nine-person board, one member of which is the county treasurer. Of the other eight board members, three are individuals belonging to, and elected by, the association itself; one is a retired member elected by the retired association members; and four are qualified voters residing in the county who are 'not connected with the county government in any capacity.' [Fn. omitted.] Unlike the Oakland City Pension Board, which functioned as an agent of the beneficiaries' employer, the county employees' retirement associations created under the 1937 act are organizations totally 'distinct from the county.' [Citation.]

"While the county was represented in the WCAB proceeding, the retirement board was not. Therefore, findings of the WCAB regarding the claimant's injury are not binding upon the retirement board. The retirement board has a 'valid, independent right to determine whether petitioner suffered injury in the course and within the scope of his employment.' " (*Summerford* v. *Board of Retirement, supra,* 72 Cal.App.3d 128, 131-132.)

Respondent System contends that, since the *French* decision, changes in the structure of respondent System's predecessor and its Board were made. Respondent System describes the present structure and nature of the Board as follows:

". . . The Board now consists of seven individuals. The active members now elect two members to the Board and a third is elected from and by retired members. The Board has exclusive control of the administration and investment of the fund. The Board is required to make periodic actuarial valuations of the system and, on the basis of such investigation, determine changes in the rate of interest being earned on the fund, and the City's and members' rates of contribution. Public hearings are held in disputed matters, with the member or dependents having the right to counsel. Finally, provision is made for petitioning for rehearing any matter heard by the Board.

"The Board now has exclusive control of the administration and investment of the fund. It dictates the City's rate of contribution, and it provides procedural due process to its members and their dependents.

"The Police and Fire Retirement System of the City of Oakland is a contributory system, in which the contribution rate of the members is sub-

ject to adjustment based upon the mortality, service and compensation experienced of [*sic*] the members.

"Thus any adjudication of a claim for benefits may have an economic impact upon the membership as well as on the City.

"These substantive changes parallel those aspects deemed decisive by the courts when considering the identity of county retirement associations, *Summerford* v. *Board of Retirement* (1977) 72 Cal.App.3d 128."

While we note that respondent System and its Board are creatures of the Oakland city charter, unlike county employees' retirement associations which are formed pursuant to the 1937 County Employees' Retirement Act (as was the case in *Summerford*), the several key elements upon which *Summerford* is based substantially exist in the present case. Adoption of appellant's view would, therefore, require repudiation of *Summerford*.

It is undisputed that respondent System is a contributory one, receiving contributions from both the City of Oakland and its current employees and that mortality, service, and compensation affect the members' contribution rate. It is undisputed that the Board is composed of two active members and one retired member of respondent System and four others. These four are the mayor (or his appointed city officer or official, approved by the city council) and "representatives" of a life insurance company, a bank, and "the community." The "representatives" are nominated by the mayor and appointed by the city council, with five-year terms not coterminous with terms of the mayor or city council members.[4]

These four are, therefore, just as unrelated, detached, and independent as the four "qualified voters" of the county in *Summerford*, inasmuch as the *Summerford* four are appointed by the county's board of supervisors and one of the four may be a supervisor.[5]

Since neither respondent System nor its Board was in privity with the city or otherwise a party to the WCAB proceedings, we must conclude, as the court did in *Summerford* and for the same reasons, that the "findings of the WCAB regarding the claimant's injury are not binding upon the retirement board. The retirement board has a 'valid, independent right to determine whether petitioner suffered injury in the course and within the scope of his

---

[4]There appears to be no provision for their removal by the mayor or city council.
[5]Government Code section 31520.1.

employment.' " (*Summerford* v. *Board of Retirement, supra*, 72 Cal.App.3d 128, 132.)[6]

Respondent, having so exercised that right, we find no error in the superior court's denial of appellant's petition for a writ of mandate.

The judgment is affirmed.

Elkington, Acting P. J., and Rushing, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 14, 1985. Broussard, J., did not participate therein. Bird, C. J., was of the opinion that the petition should be granted.

---

[6]We note, in passing, that even were the same party or parties in privity involved in the present case, considerable doubt would exist in our minds as to whether the present case would meet the identical issue requirement of *French*. The definitions of disability and standards of proof, for example, for the WCAB and any public agency retirement system, are likely to be considerably different. We need not decide that question here.

*Assigned by the Chairperson of the Judicial Council.