[No. A044566. First Dist., Div. One. July 25, 1990.]

PATRICK GEOGHEGAN, Plaintiff and Appellant, v.
RETIREMENT BOARD OF THE CITY AND COUNTY OF SAN
FRANCISCO, Defendant and Respondent.

**COUNSEL**

George J. Engler and Elisa Marie Engler for Plaintiff and Appellant.

Louise H. Renne, City Attorney, Dan Maguire and David Benjamin, Deputy City Attorneys, for Defendant and Respondent.

## OPINION

**RACANELLI, P. J.**—Plaintiff Patrick Geoghegan appeals from the trial court's denial of his petition for writ of mandate seeking a disability retirement from the fire department. We will affirm for the reasons given.

## FACTS

The relevant facts are essentially undisputed: On February 13, 1985, plaintiff, a 49-year-old San Francisco firefighter, suffered a myocardial infarction while on a skiing trip in Vail, Colorado.[1] Plaintiff had just finished his sixth day of skiing in Colorado when he experienced chest pains and was admitted to the local hospital. Plaintiff, who was an avid skier, had no history of heart problems and had earlier passed the fire department's treadmill tests.

Dr. John O'Brien, plaintiff's treating cardiologist, concluded that the cold and altitude at Vail led to an unusual coronary artery spasm which caused plaintiff's heart attack. In his stated opinion, "the most likely reason for the spasm would be the cold weather in Colorado. Cold can increase peripheral resistance and lead to coronary artery spasm." He further opined that "it is probable that had Mr. Geoghegan not gone to Vail, Colorado, to ski in February, 1985, he would not have had his myocardial infarction at that time."[2]

At his deposition, Dr. O'Brien testified that plaintiff had no functional impairment and that the nature of his disability was "prophylactic."

On March 20, 1986, plaintiff applied for an industrial disability retirement under the provisions of section 8.585-3 of the San Francisco City Charter. After an administrative hearing and rehearing, plaintiff's application was denied on September 8, 1987. However, the administrative law judge concluded that plaintiff was incapacitated from the performance of his regular firefighter duties, and that he was entitled to a presumption that his incapacity was service connected. The retirement board ultimately rebutted the presumption with proof that plaintiff's heart trouble was caused by a nonindustrial event occurring at the same time his heart symptoms developed.[3]

---

[1] Plaintiff had been a firefighter since 1964 and had previously worked as a San Francisco police officer.

[2] Dr. O'Brien's initial impression was that the myocardial infarction was caused by coronary arteriosclerosis. After reviewing the results of plaintiff's cardiac catheterization, he revised his diagnosis because little or no evidence of arteriosclerosis was found.

[3] It appears that plaintiff had earlier been awarded workers' compensation benefits upon a determination that his heart condition was industrially related. (SFO No. 0316652, SFO No. 0331009.)

On October 27, 1987, plaintiff filed a petition seeking mandamus relief pursuant to Code of Civil Procedure section 1094.5.

On October 5, 1988, after considering both the administrative record and the workers' compensation proceedings, the trial court entered judgment denying the petition. Following plaintiff's unsuccessful motion for new trial, this appeal ensued.

## DISCUSSION

■ In reviewing the decision of an administrative agency such as the retirement board, the trial court applies its independent judgment and weighs the evidence reflected in the administrative record. (Code Civ. Proc., § 1094.5, subd. (c); *Dickey* v. *Retirement Board* (1976) 16 Cal.3d 745, 746-747 [129 Cal.Rptr. 289, 548 P.2d 689].) As plaintiff correctly points out, an abuse of judicial discretion is established if the agency's findings are not supported by the weight of the evidence. (Code Civ. Proc., § 1094.5, subd. (b).) However, the test on appeal is the familiar substantial evidence test: namely, whether the evidentiary record reveals substantial support, contradicted or uncontradicted, that the trial court's determinations are correct. (*Yakov* v. *Board of Medical Examiners* (1968) 68 Cal.2d 67, 72-73 [64 Cal.Rptr. 785, 435 P.2d 553]; *Moran* v. *Board of Medical Examiners* (1948) 32 Cal.2d 301, 308 [196 P.2d 20].) Thus, under the traditional standards which apply, all conflicts in the evidence must be resolved in favor of the respondent, indulging all reasonable inferences to uphold the judgment, and deferring to the trial court on inferences reasonably deduced from the facts. (*Ibid.*) Additionally, if undisputed facts can support more than one interpretation, the reviewing court is bound by the factual interpretation made by the trial court. (*Lacy* v. *California Unemployment Ins. Appeals Bd.* (1971) 17 Cal.App.3d 1128 [95 Cal.Rptr. 566].)

### I.

■ Plaintiff first argues that under Labor Code section 3212, his disabling heart condition must be presumed service connected as a matter of law.[4] Plaintiff maintains that he was prophylactically incapacitated because

---

[4] Labor Code section 3212 provides in pertinent part: "Such hernia, heart trouble or pneumonia so developing or manifesting itself in such cases shall be presumed to arise out of and in the course of the employment." However, the service-connected presumption in relation to plaintiff's disability claim is governed by San Francisco Administrative Code section 16.85, which provides: "Whenever any member of the Police Department or Fire Department shall become incapacitated for the performance of his duty on account of heart trouble or pneumonia, which develops or manifests itself while such member is in the service of his department, such heart trouble and such pneumonia shall be presumed to arise out of and in the course of his employment, unless there is evidence to the contrary. (Ord. No. 559 (1939), Sec. 1)"

Section 16.85 of the San Francisco Administrative Code essentially tracks the Labor Code provision with the exception of the latter's "anti-attribution" clause discussed hereafter.

of his predisposition to coronary artery spasms and not because of his myocardial infarction. He contends that this predisposition was the undisputed cause of his heart trouble and that the myocardial infarction was simply the initial manifestation. (See *Muznik* v. *Workers' Comp. Appeals Bd.* (1975) 51 Cal.App.3d 622, 635 [124 Cal.Rptr. 407] [" 'heart trouble' . . . encompass(es) any affliction to . . . the heart caused directly by that organ or the system to which it belongs, or to it through interaction with other afflicted areas of the body"]; see also *Soby* v. *Workmen's Comp. Appeals Bd.* (1972) 26 Cal.App.3d 555, 557 [102 Cal.Rptr. 727] ["(heart trouble) may develop as an unrecognized, undiagnosed, asymptomatic condition," internal quotation marks omitted].)

The trial court found from the weight of the evidence that "petitioner's heart condition was not received in or caused by the performance of his duties as a firefighter." Defendant board contends that substantial evidence, primarily statements of the treating physician, supports this pivotal finding as well as the implied finding that plaintiff's disability was due to his myocardial infarction caused by the cold and altitude.

The board emphasizes that, contrary to plaintiff's claim, the actual cause of plaintiff's disability was disputed throughout the proceedings. The cause of plaintiff's incapacity presented a factual question for the trial court to which we accord great deference. (*DePuy* v. *Board of Retirement* (1978) 87 Cal.App.3d 392, 399-400 [150 Cal.Rptr. 791, 12 A.L.R.4th 1150]; *Kimbrough* v. *Police & Fire Retirement System* (1984) 161 Cal.App.3d 1143, 1149 [208 Cal.Rptr. 112].) ██ ██ ██ ██ ██ Since the physician's statements and report are reasonably susceptible of an interpretation that plaintiff's myocardial infarction is the cause of his present disability, it matters not that the same evidence could support a contrary inference that the cause of disability was plaintiff's predisposition to coronary artery spasms.[5]

Relying on two earlier workers' compensation cases, the board further argues that the trial court correctly determined that the presumption of industrial causation was rebutted by evidence of the "nonindustrial events and activities" surrounding plaintiff's myocardial infarction. (See *Turner* v. *Workmen's Comp. App. Bd.* (1968) 258 Cal.App.2d 442, 449, fn. 7 [65 Cal.Rptr. 825] [presumption of industrial cause rebuttable by evidence of exertion from abalone fishing]; *Bussa* v. *Workmen's Comp. App. Bd.* (1968)

---

[5] We reject plaintiff's argument that because the trial court made no specific finding on this point, we are bound by the administrative finding that his disabling condition is the coronary artery spasm. It is well established that even in the absence of a specific trial court finding, we are bound to presume a finding in support of the judgment. (See, e.g., *Mayes* v. *Sturdy Northern Sales, Inc.* (1979) 91 Cal.App.3d 69, 81 [154 Cal.Rptr. 43].)

259 Cal.App.2d 261, 267 [66 Cal.Rptr. 204] [evidence of a firefighter's physical exertion at a second job could rebut presumption].) The board underscores Dr. O'Brien's testimony that but for the cold and altitude, plaintiff would not have suffered a myocardial infarction, without which he would have no incapacitating disability.

Plaintiff counters that but for his predisposition to coronary artery spasm, he would have had no myocardial infarction and that it was incumbent upon the board to show that the cold and altitude were the sole cause of his heart trouble. (See *City and County of San Francisco* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 103, 112 [148 Cal.Rptr. 626, 583 P.2d 151].) We remain unpersuaded.

Given our required deference to the adequately supported factual determinations of the trial court, the conclusion is inescapable that plaintiff's disability was due to the myocardial infarction caused by the cold and altitude encountered while skiing.[6]

## II.

Plaintiff next renews his argument below that the board is collaterally estopped to deny the Workers' Compensation Appeals Board (WCAB) finding that his heart trouble was due to an industrial cause. Plaintiff contends that because the retirement board is designated by the City of San Francisco to administer the workers' compensation benefits, it has a proprietary interest in that award so that it should be bound by the result. However, virtually all of the reviewing courts which have considered this question have concluded there is no privity justifying application of the doctrine of collateral estoppel.

In *Traub* v. *Board of Retirement* (1983) 34 Cal.3d 793 [195 Cal.Rptr. 681, 670 P.2d 335], the Supreme Court considered the Los Angeles County Employees Retirement Association and determined that the County of Los Angeles (responsible for the WCAB award) and the county retirement association were not in privity. "A county retirement board, by contrast,

---

[6]Plaintiff continually but mistakenly cites Labor Code section 3212 for the presumption that a firefighter's heart trouble is presumed to arise out of his or her employment. As the board correctly notes, that section applies to workers' compensation proceedings; the applicable provision in this pension situation is San Francisco Administrative Code section 16.85. The basic difference is that the Labor Code section includes an "anti-attribution" clause, i.e., heart trouble manifesting itself during employment shall not be attributed to any disease existing prior to such development or manifestation. The San Francisco administrative regulation does not contain a similar limitation. However, since the board makes no attribution argument, the superficial dispute becomes irrelevant.

does not act as agent for the county, but as administrator of the county retirement system, an independent entity established pursuant to the County Employees Retirement Law of 1937. (§ 31450 et seq.) The constituency of that entity is not limited to county employees, but may include employees of various political subdivisions and districts within the county. Funding for the system comes both from the governmental employers and from the employees on an actuarial basis, so that any adjudication of a claim for benefits may have economic impact upon the membership of the association as well as upon the treasury of the county and participating political entities. (§§ 31453-31454.6.) The Courts of Appeal have consistently held that a county retirement board is not bound by adjudication of a workers' compensation claim against the county because the privity requisite to application of collateral estoppel principles does not exist. (*Grant* v. *Board of Retirement* (1967) 253 Cal.App.2d 1020, 1021 [61 Cal.Rptr. 791]; *Petry* v. *Board of Retirement* (1969) 273 Cal.App.2d 124, 129 [77 Cal.Rptr. 891]; *Summerford* v. *Board of Retirement* (1977) 72 Cal.App.3d 128, 132 [139 Cal.Rptr. 814]; *Preciado* v. *County of Ventura* (1983) 143 Cal.App.3d 783 [192 Cal.Rptr. 253]; see also, *Flaherty* v. *Board of Retirement* (1961) 198 Cal.App.2d 397, 402-404 [18 Cal.Rptr. 256].) The distinctive identity, constituency and interests of a county retirement system support that rule, and we follow it here." (34 Cal.3d at pp. 798-799, fn. omitted.)

In 1984, we reached a similar conclusion in the context of a city police and fire retirement system. (See *Kimbrough* v. *Police & Fire Retirement System, supra*, 161 Cal.App.3d 1143.)

Most recently, in *Bianchi* v. *City of San Diego* (1989) 214 Cal.App.3d 563 [262 Cal.Rptr. 566], the Fourth District determined that the San Diego City Retirement Board could not be collaterally estopped by an earlier WCAB award. "Under limited circumstances, a WCAB award to an employee may collaterally estop the employee's retirement board from relitigating issues previously decided in the WCAB proceeding. (See, e.g., *French* v. *Rishell* (1953) 40 Cal.2d 477 [254 P.2d 26].) However, the courts have more frequently declined to give WCAB rulings collateral estoppel effect in subsequent retirement board proceedings, either because of a lack of identity of parties (see, e.g., *Preciado* v. *County of Ventura* (1982) 143 Cal.App.3d 783, 789 [192 Cal.Rptr. 253]), or because of differences between the nature of the issues considered during a workers' compensation proceeding and the nature of issues considered by a retirement board proceeding. (See generally, *Reynolds* v. *City of San Carlos* (1981) 126 Cal.App.3d 208, 212-213 [178 Cal.Rptr. 636]; *Harmon* v. *Board of Retirement* (1986) 62 Cal.App.3d 689, 697 [133 Cal.Rptr. 154].)" (214 Cal.App.3d at pp. 566-567.) The salient

factors considered dealt with independent funding and administration, and actuarially determined contributions by employees and employer.

Here, the board cogently described the relevant attributes: first, its independence from the local agency governing board (technically, the defendant in WCAB proceedings). The board acts independently of the City and County of San Francisco Board of Supervisors with only one seat held by a supervisor. Three members are active employees elected by the system membership; and three are community representatives in specific fields of expertise appointed by the mayor. (S.F. Charter, § 3.670.) Additionally, the board has exclusive jurisdiction over the administration of the retirement system and investment of its funds. (S.F. Charter, §§ 3.670, 3.671.)

Notwithstanding, plaintiff argues that the board is not independent because it is established by city charter, the appointed members are officers of the City and County of San Francisco, and the administrative costs are paid by the city.[7] (S.F. Charter, §§ 1.103, 8.510.) But the key attributes noted by the board are far more important in determining its independence from city control.

Second, the board points to its breadth of membership, including a wide range of public employees. (It is uncontroverted that the system covers employees of the San Francisco Unified School District, the community college district, the parking authority, and superior court personnel.) (Cf. *Traub* v. *Board of Retirement, supra*, 34 Cal.3d at p. 798.)

Finally, the board operates with complete autonomy, both in its exclusive control over the trust funds it administers and in its operation as a contributory, actuarially based system. (S.F. Charter, §§ 3.673, 8.585-11.) The board further points out that it operates as a fiduciary in collecting and administering the trust funds of the members, and that claims for benefits directly impact members' actuarial assessments and fund earnings. (See *Bianchi* v. *City of San Diego, supra*, 214 Cal.App.3d at pp. 571-572.)

Plaintiff also asserts that the board's administration of the municipal workers' compensation program provides the requisite financial identity. The assertion overlooks the fact that the funding for workers' compensation benefits derives from the general fund of the city and *not* from member employees or other agencies which are included within the retirement board system.[8] Plaintiff simply misunderstands the different purposes and indepen-

---

[7] We have taken judicial notice of relevant city charter and administrative code provisions as requested by plaintiff.

[8] Plaintiff advances the companion claim that because other charter provisions authorize board reimbursement for costs associated with disability benefits, no direct impact on retire-

dent funding of the two separate systems. No identity of party or capacity exists.

The judgment is affirmed.

Newsom, J., and Stein, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 10, 1990.

.

.

---

ment system funds will occur. The claim has no merit. The mere circumstance that disability benefits will usually be paid at an earlier time than regular retirement benefits directly impacts members of the retirement system unrepresented when the board acts on behalf of the city to administer compensation benefits.