Filed 12/27/13  Oswald v. S.F. Employees' Retirement Sys. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| WILLIAM A. OSWALD,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>SAN FRANCISCO CITY AND COUNTY EMPLOYEES' RETIREMENT SYSTEM,<br><br>      Defendant and Appellant. | A136293<br><br>(San Francisco County<br>Super. Ct. No. CPF-12-511935) |

## I.  INTRODUCTION

William Oswald fractured his back in the course of his employment as a San Francisco firefighter and paramedic and was unable to return to work.  A dispute arose between Oswald and the San Francisco City and County Employees Retirement System (the Retirement System) regarding the proper amount of Oswald's disability retirement pension.  Ultimately, the superior court issued a peremptory writ of mandate directing the Retirement System to adjust Oswald's retirement allowance to be 74 percent of his final compensation.

The Retirement System seeks reversal of the judgment on the grounds that the trial court (1) misinterpreted provisions of the San Francisco City Charter (the S.F. Charter)[1] which govern the calculation of a disability retirement allowance; and (2) erroneously

---

[1]  We grant the Retirement System's motion for judicial notice of provisions of the S.F. Charter and of the San Francisco Administrative Code which pertain to the issues on appeal.  (Evid. Code, §§  451 & 459.)  However, we deny its  motion for judicial notice of several San Francisco ballot propositions because they are not relevant to this appeal.

found that the Retirement System was bound by a disability determination made by the San Francisco Workers Compensation Appeals Board (WCAB). We reject these claims of error and affirm the judgment.

## II. STATEMENT OF FACTS

### A. *Oswald's Injury*

In August 2001, Oswald was employed by the San Francisco Fire Department as a firefighter/paramedic. Before that he had been a firefighter in the Air Force for two years and in Sausalito for eight years.

On May 10, 2006, Oswald was working at a fire station on Polk Street when he responded to a medical call for a woman who was in cardiac arrest. While carrying the victim on a backboard down a narrow hallway, Oswald turned to hand some equipment to a co-worker when he felt a "pop" in his lower back and his left leg went numb below the knee. A CT scan revealed that Oswald had fractured his back and his neurosurgeon, Dr. Bruce McCormack, recommended surgery, which was performed on October 31. Oswald's back was "fused with five screws, two titanium rods and an intravertebral body bone plug."

Over the next year, Dr. McCormack monitored Oswald's recovery and reported on his progress noting, among other things, that Oswald was eventually able to reduce his pain medication but that he continued to experience back pain, stiffness, and numbness in his left leg. In October 2007, McCormack reported that Oswald " 'can no longer run. He cannot sit or stand for [a] prolonged period of time. He can't lift heavy weights. He notices left leg numbness and weakness and has difficulty sleeping at night. He still cannot bend completely pain-free or go through a full day without medications.' " Dr. McCormack restricted Oswald from lifting 25 pounds, from repetitive bending or stooping, and from prolonged standing or sitting.

### B. *Oswald's Application for Industrial Disability Retirement*

On November 26, 2007, Oswald applied to the Retirement System for industrial disability retirement. The requested date of retirement was November 1, 2007, and the

2

basis of the disability was described as "L-4 fractures (L-4, L-5 fusion surgery—titanium rods, screws)."

Oswald's disability retirement application was submitted to the San Francisco Retirement Board, the body established by the S.F. Charter for the purpose of administering the Retirement System for the City and County of San Francisco (the City). (S.F. Charter, § 12.100.) The Retirement Board referred Oswald's application to the California Office of Administrative Hearings pursuant to section A8.518 of the S.F. Charter, which provides that any application for disability retirement "shall" be decided by a "qualified and unbiased hearing officer" employed by the Retirement Board.

At a July 24, 2008, hearing before Administrative Law Judge (ALJ) Michael Cohn, the Retirement System stipulated that Oswald's back condition was the result of an industrial injury. On August 21, 2008, ALJ Cohn issued an order granting Oswald's application for industrial disability retirement. ALJ Cohn found, among other things, that Oswald had not worked since May 2006, that his employer had not offered him any light or modified duty, and that the restrictions imposed by his doctor had not been lifted. Ultimately, ALJ Cohn concluded that "the evidence presented established that applicant's back injury renders him substantially unable to perform the usual duties of a firefighter/paramedic, duties that would entail heavy lifting, repetitive bending and stooping, and prolonged standing or sitting, all of which he cannot do."

The date of Oswald's disability retirement was set at November 1, 2007. As of that date, Oswald was 37 years old which meant that he did not qualify for a "service retirement." (S.F. Charter, § A8.598-2 [firefighter must have at least five years of service and be at least 50 years old to qualify for service retirement].) Therefore, the Retirement System calculated Oswald's disability retirement pension pursuant to section A8.598-3 of the S.F. Charter (section A8.598-3), which states in relevant part:

"Any member of the fire department who becomes incapacitated for the performance of his or her duty by reason of any bodily injury received in, or illness caused by the performance of his or her duty, shall be retired. If [a member of the fire department] is not qualified for service retirement, he or she shall receive a retirement

3

allowance in an amount which shall be equal to the same percentage of the final compensation of said member, as defined in Section A8.598-1, as his or her percentage of disability is determined to be. The percentage of disability shall be as determined by the Workers' Compensation Appeals Board of the State of California upon referral from the retirement board for that purpose; provided that the retirement board may, by five affirmative votes, adjust the percentage of disability as determined by said appeals board; and provided, further, that such retirement allowance shall be in an amount not less than 50 percent nor more than 90 percent of the final compensation of said member, as defined in Section A8.598-1."

As reflected in this quoted language, the formula for calculating Oswald's disability retirement pension was a percentage of his final compensation that was equal to the percentage of his permanent disability as calculated by the Workers' Compensation Appeals Board (WCAB) "upon referral from the retirement board for that purpose . . . ." (S.F. Charter, § A8.598.3.)

In this record we find no indication that the Retirement System actually made a "referral" of this matter to the WCAB. Although the parties do not address this fact, it appears they both assume the referral was automatic because, as is often the case, Oswald had a parallel workers' compensation claim related to his May 2006 back injury. However, when Oswald was granted disability retirement, his workers' compensation claim was still pending. As the Retirement System concedes on appeal, "WCAB decisions that may affect the amount of a pension are often made after the pension decision has been made . . . . " In the meantime, the Retirement System paid Oswald the minimum disability retirement allowance under section A8.598-3 of 50 percent of his final compensation.

C.      *Oswald's Workers' Compensation Claim*

There is no dispute on appeal that Oswald pursued a workers' compensation claim against the City for his May 2006 back injury. However, the record before us does not contain a copy of the workers' compensation claim form that was filed. The evidence before us does establish that Oswald filed only one workers' compensation claim (No.

4

063628) and that the claim was for a single injury, the May 2006 back injury. To resolve that claim, Oswald participated in a series of medical and psychological evaluations.

In July 2008, Dr. Roy Curry conducted an "agreed" psychological evaluation of Oswald. Curry reported that Oswald was experiencing low levels of depression as well as some degree of psychological distress, but no significant dysfunction. Problems outlined in Curry's report included ongoing physical pain even when taking medication, a perceived loss of identity associated with the loss of a career, problems sleeping and some sexual dysfunction. As a result of Dr. Curry's report, the claims adjuster that was assigned to handle Oswald's workers' compensation claim for the City's Department of Human Resources accepted Oswald's "psychological condition [as] an industrial compensable consequence to his back claim of May 10, 2006."

In February 2009, Oswald underwent a neuropsychological evaluation performed by Dr. Claude Munday who reported that Oswald had some cognitive deficits that were attributable to three factors, pain, medicine effects and sleep deprivation. Dr. Munday opined that all of these factors were a consequence of the May 2006 industrial injury.

In February 2009, Oswald also underwent another "Agreed Medical Evaluation," which was completed by Dr. Revels Cayton. Dr. Cayton determined that Oswald's back injury was the cause of several daily life impairments including a sleep disorder, sexual dysfunction and gastroesophageal reflux disease (GERD). After conducting a supplemental evaluation in December 2009, Dr. Cayton reported that, since Oswald's surgery, "he has had unremitting pain. He has disruptions of most activities of daily living. He requires opiates and sedative hypnotics for sleep. He has developed depression that has been unremitting and has increased in intensity over time."

On July 19, 2010, a hearing was held before the Workers' Compensation Division of the Department of Industrial Relations. Oswald and the City submitted a joint request to approve a settlement of Oswald's workers' compensation claim pursuant to a stipulated award. The stipulation was executed by Oswald's attorney and by an attorney from the City Attorney's office. The Workers' Compensation ALJ approved that request

5

and adopted the stipulated award. The terms of the stipulated award are documented in handwriting on a pre-printed, multiple page form.

The stipulated award document reflects that Oswald and the City agreed that Oswald suffered one "specific injury" on May 10, 2006, and the affected "body parts" were the lower back, left leg, GERD, sexual dysfunction, sleep disorder, arousal disorder, deconditioning/respiratory, pulmonary symptoms, and "psych/neuro cognitive."

Another section of the stipulated award contains a box for a description of the "injury(ies) arising out of and in the course of employment." In that box, somebody hand wrote the following comments: "as outlined above, permanent disability as follows:

"1) Low back 43% per Dr. McCormack (treating) 1/27/10 report

"2) GERD 8%; sexual dysfunction 12%; sleep dysfunction 23%; deconditioning/respiratory 19%, as per Dr. Cayton (AME) 12/18/09, 2/23/09 reports

"3) psych/neuropsych 11% as per Dr. Munday 3/6/09

"CVC-74%"[2]

In yet another part of the stipulated award, the parties agreed that Oswald's injury caused a temporary disability prior to the date of retirement for which Oswald had already been paid, and a "permanent disability of 74%."

**D.** *Oswald's Request to Adjust Retirement Allowance*

In September 2010, Oswald submitted a written request that the Retirement System adjust his retirement pension to reflect the 74 percent permanent disability rating established by the WCAB award pursuant to section A.8.598-3 of the S.F. Charter.

On October 8, 2010, a Retirement System employee sent Oswald a letter denying his request for a pension adjustment along with a copy of the Retirement Board's "WC Adjustment of Industrial Disability Retirement Allowance Policy" (the Pension Adjustment Policy).

---

[2] According to the Respondent's Brief, "CVC" stands for "combined values chart," which is a disability rating established by the American Medical Association so that physicians can account for the effects of multiple impairments with a summary value.

6

The Pension Adjustment Policy is a three-page document that was approved by the Retirement Board in August 2009 for the stated purpose of administering provisions of the S.F. Charter and Administrative Code "that allow the Retirement System to adjust the amount of industrial disability retirement benefits paid by the Retirement System to safety members who are under the age of 50 and who have not yet attained 25 years of credited service."[3]

The Retirement System's letter denying Oswald's request for a pension adjustment stated in relevant part: "Under the [Pension Adjustment] Policy you are not entitled to a pension adjustment to 74% because your industrial disability retirement was granted solely on your back injury. The WC determination (Stipulation for Award) shows you received 43% permanent disability for your low back condition. Since your 43% permanent disability for your back condition does not exceed the 50% threshold you receive under the Charter, no adjustment can be made."

Oswald submitted a request for review of the Retirement System's decision to deny his request for a pension adjustment. Pursuant to the Pension Adjustment Policy, the matter was referred to the Office of Administrative Hearings for appointment of an ALJ to serve as the "Industrial Disability Adjustment Hearing Officer," and the matter was decided without a hearing. On November 29, 2011, ALJ David Benjamin filed an order denying Oswald's request to adjust his industrial disability retirement allowance.

ALJ Benjamin concluded that "[S.F.] Charter section A8.598-3 sets the amount of a firefighter's industrial disability retirement allowance in accordance with his 'percentage of disability.' The 'percentage of disability' must refer to the condition or conditions for which the firefighter was granted an industrial disability retirement. In this case, applicant's percentage of disability for his low back condition—the condition for which he sought and was granted an industrial disability retirement—is 43 percent. The

---

[3] At some time not evident from this record, the service retirement requirements for a member of the fire department were changed; section A8.598-2 currently states that those requirements are 50 years of age and 5 years of service.

retirement system correctly set applicant's allowance at 50 percent of his final compensation."

In reaching this conclusion, ALJ Benjamin acknowledged that the WCAB approved stipulations between the City and Oswald that each of the other five conditions caused by Oswald's back injury were (1) work-related; and (2) caused a permanent disability. However, ALJ Benjamin concluded that these findings were not binding on the Retirement System. ALJ Benjamin also concluded that these WCAB findings were distinct from the question whether these other conditions incapacitated Oswald from the performance of his duty, a question that the Retirement System Retirement Board had never decided and which was within its sole jurisdiction to decide.

E.    *The Present Action*

In April 2012, Oswald filed a petition for writ of mandate to compel the Retirement System to increase his disability retirement from 50 percent to 74 percent. The Retirement System opposed the petition, arguing that ALJ Benjamin correctly interpreted and applied the relevant S.F. Charter provisions and that the WCAB proceeding established that the percentage of disability for Oswald's lower back condition was 43 percent.

On May 16, 2012, the Honorable Harold E. Kahn conducted a hearing on the writ petition. The court received the administrative record into evidence, conducted an independent review of that record and entertained arguments before the case was submitted. Thereafter, on May 21, the court filed an order granting Oswald's petition. The May 21 order states, in its material part:

"The City's agreement that Petitioner is seventy four percent (74%) disabled as a result of the 2006 injury to his back requires that Petitioner's disability retirement percentage also be seventy-four percent (74%) per section A8.598.3 of the San Francisco Charter notwithstanding that the seventy-four percent (74%) includes injuries to parts of Petitioner's body other than his back and that Judgment be entered, providing that:  [¶]  A Peremptory Writ of Mandate issue directing the Board of the San Francisco Employees'

8

Retirement System to adjust Petitioner's retirement allowance to seventy-four percent (74%) of his final compensation."

### III. DISCUSSION

**A.**     *Standard of Review*

In the present case, the Retirement System contends that the judgment rests on an improper interpretation of S.F. Charter provisions governing disability retirement. To the extent our disposition of this appeal requires us to resolve questions of law, our review is de novo. (*Alameida v. State Personnel Bd.* (2004) 120 Cal.App.4th 46, 52.) However, we do not independently review the superior court's findings of fact. Rather, "the test on appeal is the familiar substantial evidence test: namely, whether the evidentiary record reveals substantial support, contradicted or uncontradicted, that the trial court's determinations are correct. [Citations.] Thus, under the traditional standards which apply, all conflicts in the evidence must be resolved in favor of the respondent, indulging all reasonable inferences to uphold the judgment, and deferring to the trial court on inferences reasonably deduced from the facts. [Citation.] Additionally, if undisputed facts can support more than one interpretation, the reviewing court is bound by the factual interpretation made by the trial court. [Citation.]" (*Geoghegan v. Retirement Board* (1990) 222 Cal.App.3d 1525, 1529 (*Geoghegan*).)

**B.**     *Section A8.598-3*

**1.**     *The Retirement System's Contentions*

The Retirement System's primary claim of error is that the judgment rests on an erroneous interpretation of language in section A8.598-3 of the S.F. Charter which states that an industrial disability retiree who does not qualify for service retirement "shall receive a retirement allowance in an amount which shall be equal to the same percentage of the final compensation of said member . . . as his or her percentage of disability is determined to be. The percentage of disability shall be as determined by the Workers' Compensation Appeals Board of the State of California upon referral from the retirement board for that purpose . . . ."

9

According to the Retirement System, the superior court committed legal error by finding that this provision authorizes the WCAB to award a disability retirement pension for any and all injuries that are compensable under the state's workers' compensation system, whether or not those injuries were the basis for the Retirement Board's decision to grant the member an industrial disability retirement.

Preliminarily, it is important to clarify two aspects of the judgment below. First, it does not authorize the WCAB to do anything; it directs the Retirement System to adjust Oswald's disability retirement allowance. Thus, the issue on appeal is whether this directive is consistent with section A8.598-3, which indisputably governs the Retirement Board's calculation of Oswald's disability retirement allowance.

Second, although the superior court based its ruling on section A8.598-3, it did not make an actual finding that the percentage of disability determination required by this provision pertains to every injury compensable under workers' compensation law. Without acknowledging this fact, the Retirement System intimates that such a finding is implicit in this judgment because the 74 percent disability rating that the WCAB gave to Oswald includes conditions other than the back condition that resulted in the determination that he was entitled to a disability retirement. This wrinkle in the Retirement System's argument fundamentally changes the nature of its claim of error because it incorporates a factual assumption, i.e., that the WCAB's percentage of disability determination is based on conditions other than the May 2006 back injury.

As we will explain, the Retirement System's claim that the trial court committed an error of law fails for two independent reasons. First, substantial evidence establishes that the injury for which Oswald was granted disability retirement rendered him 74 percent permanently disabled. Second, and in any event, even if the WCAB's 74 percent disability determination in this case included injuries other than the injury that resulted in the disability retirement determination, the superior court correctly applied section A8.598-3. We will separately explain these two conclusions.

10

## 2.    *The Judgment is Supported by Substantial Evidence*

The factual premise of the Retirement System's claim of legal error is that the WCAB finding that Oswald suffered a permanent disability of 74 percent is based on "conditions" that are distinct from the May 2006 injury which qualified him for disability retirement.

ALJ Benjamin accepted and adopted the Retirement System's factual theory.  He found, among other things, that (1) in the disability retirement proceeding, Oswald claimed "disability only on the basis of a low back condition"; (2) Oswald's worker compensation case was not limited to his back injury, but also included claims for GERD, sexual dysfunction, sleep dysfunction, deconditioning/respiratory impairment and psyche/neurocognitive impairment; (3) because Oswald's disability retirement claim was based solely on his low back condition, ALJ Cohn did not determine whether any of the other five conditions at issue in the WCAB proceeding were work-related or whether they incapacitated Oswald from the performance of his duty; and (4) the percentage of disability for Oswald's low back condition, "the condition for which he sought and was granted an industrial disability retirement" was 43 percent.

However, these findings were not compelled by the evidence.  Indeed, in our view, the overwhelming evidence is that (1) Oswald was granted industrial disability retirement because he broke his back in May 2006; (2) Oswald's workers' compensation claim was based entirely on the same May 2006 injury that resulted in the grant of industrial disability retirement; (3) the five "conditions" referenced in the stipulated award were not separate injuries but direct results of the May 2006 injury; and (4) the WCAB made a determination that the percentage of disability Oswald suffered as a result of this single May 2006 injury was 74 percent.

Every aspect of the Retirement System's claim of legal error assumes that the WCAB's determination that Oswald is 74 percent permanently disabled includes and embraces disabling conditions that are distinct from the 2006 back injury.  The Retirement System attempts to defend this factual assumption for the first time in its reply brief.

11

The Retirement System first contends that "the issue" in this case is not whether Oswald's "conditions were 'manifestations of' the incident that occurred on May [10], 2006, or even whether they were manifestations of his back injury. The issue is whether they were caused by performance of duty and incapacitating for duty." We disagree; the factual issue presented by this appeal pertains to the nature of the disabling injury that resulted in the decision to grant Oswald industrial disability. The record contains substantial evidence that ALJ Cohn granted Oswald industrial disability retirement for a May 2006 back *injury*, not for a lower back condition as the Retirement System assumes (and ALJ Benjamin found).[4] The record also contains substantial evidence that the WCAB made a determination that the May 2006 back injury rendered Oswald 74 percent permanently disabled.

The Retirement System also contends that the trial court was not "empowered" to make factual determinations about Oswald's conditions "in the first instance." According to this theory "[i]t was for the Retirement Board to address those issues through its ALJ," but since Oswald failed to submit these conditions to the Retirement Board ALJ, Oswald could not properly seek "a finding on them in the first instance by the trial court on a petition for writ of mandamus." First, there has never been any dispute that ALJ Cohn made all of the necessary findings to support the determination that Oswald's May 2006 injury entitled him to industrial disability retirement. Second, ALJ Benjamin made additional factual findings that the "conditions" referenced in the WCAB award were distinct from and not part of the May 2006 injury. Thus, we reject the Retirement System's contention that these material factual issues were presented to the superior court "in the first instance."

Alternatively, the Retirement System claims that the trial court did not actually make any factual findings regarding the "conditions" listed in the WCAB award. Although the order granting Oswald's writ petition does not contain express findings, the

---

[4] Indeed, the first sentence of section A8.598-3 speaks of an incapacitating "bodily injury received in, or illness caused by the performance of [a] duty," but makes no reference to an incapacitating "condition."

trial court's remarks at the hearing support our conclusion that the court did indeed find that all of the conditions listed in the WCAB award were part of the May 2006 injury.[5] Furthermore, "[i]t is well established that even in the absence of a specific trial court finding, we are bound to presume a finding in support of the judgment. [Citation.]" (*Geoghegan, supra*, 222 Cal.App.3d at p. 1530, fn. 5.) Here, substantial evidence establishes that the "conditions" listed in the WCAB award were not separate injuries as ALJ Benjamin found but, rather, they were direct consequences of the May 2006 injury that resulted in the decision to grant Oswald industrial disability retirement. In other words, the evidence in this record supports the superior court's implied findings of fact that the Retirement Board granted Oswald industrial disability retirement for a May 2006 injury and the WCAB determined that precisely the same May 2006 injury caused Oswald to be 74 percent permanently disabled.

The factual premise of this entire appeal is that the judgment validates a calculation of Oswald's percentage of disability which includes conditions that had nothing to do with ALJ Cohn's finding that Oswald was entitled to an industrial disability retirement. We reject this premise, which is based on the Retirement System's unduly constricted factual definition of the disabling injury that Oswald suffered. Instead, we find substantial evidence in this record that the 74 percent permanent disability calculation in the stipulated award was for precisely the same incapacitating injury that resulted in the award of industrial disability retirement, i.e., the May 2006 back injury.

**3.      *The Judgment Does Not Conflict with Section A8.598-3***

Even if we could be persuaded that the WCAB's 74 percent permanent disability rating encompasses "conditions" that are factually distinct from the May 2006 back

---

[5] For example, in response to the City Attorney's argument that the Retirement Board never made a "determination of disability" on the "nonback body parts," the court responded that "all of these other body parts, the sleep, the sexual d[y]sfunction, the GERD . . . appear to me, from the administration record, to be just other manifestations of the May 2006 industrial injury . . . ."

13

injury, we would affirm this judgment because we are not persuaded by the Retirement System's interpretation of section A8.598-3.

The Retirement System interprets section A8.598-3 as requiring that the "percentage of disability" calculated by the WCAB must pertain solely to the specific incapacitating "condition" that resulted in the award of a disability retirement. ALJ Benjamin agreed with the Retirement System and made a finding of law that the "percentage of disability" referred to in section A8.598-3 "must refer to the condition or conditions for which the firefighter was granted an industrial disability retirement . . . ." On appeal, the Retirement System contends that its interpretation of this charter provision is correct and that we should adopt it as our own.

The Retirement System's contention raises an issue of statutory interpretation which we review de novo by applying "the normal rules of statutory interpretation." (*Mason v. Retirement Board* (2003) 111 Cal.App.4th 1221, 1227.) In its appellant's brief, the Retirement System focuses almost exclusively on the rule of statutory construction which gives "great weight and respect to an administrative agency's interpretation of a statute governing its powers and responsibilities." (*Id*. at p. 1228.) However, it overlooks a more fundamental rule which we find dispositive here: Our primary goal is to ascertain legislative intent which "should be determined, if possible, from the language of the statute at issue." (*Id*. at p. 1227.)

Here, the Retirement System's interpretation of section A8.598-3 conflicts with the plain language of this charter provision. Section A8.598-3 does not speak in terms of "conditions," or in any way require that the WCAB's determination of an injured person's percentage of disability must pertain exclusively to the "condition" or even the "injury" for which the person was granted a disability retirement.

Section A8.598-3 uses clear and mandatory language to describe the formula for calculating a retirement allowance for a disabled retiree who does not qualify for a service retirement. That allowance "shall be equal to" the same percentage of his final compensation as his "percentage of disability is determined to be," and "the percentage of disability shall be as determined by the Workers' Compensation Appeals Board of the

14

State of California . . . ." (S.F. Charter, § A8.598-3.) This mandatory and unequivocal language is not conducive to the Retirement System's attempt to imply an additional requirement that the WCAB's determination of the percentage of disability *must* pertain exclusively to the "condition" or even the "injury" for which the person was retired.

Indeed, the only language in section A8.598-3 which appears open to interpretation is the phrase which provides that the WCAB's determination is made "upon referral from the retirement board for that purpose." (S.F. Charter § A8.598-3.) According to the Retirement System, the "purpose" of the "referral" to the WCAB is to obtain a disability percentage for the precise injury that resulted in the disability retirement, and nothing more. This argument might have weight if there were any evidence in this record that the Retirement Board actually made a referral to the WCAB for purposes of calculating a disability retirement allowance under section A8.598-3 in this case. However, no such evidence exists.

Rather, the record before us suggests that the Retirement System has made an efficiency-based policy decision to forego any referral contemplated by section A8.598-3, and to rely instead on WCAB determinations that are made in the context of resolving parallel workers' compensation claims. For purposes of this appeal, we need not question the propriety of that decision. However, we do not find any language in section A8.598-3 which authorizes the Retirement System to parse the WCAB's percentage of disability determination into separate "conditions" for purposes of calculating a disability retirement allowance.

To the contrary, section A8.598-3 expressly limits the Retirement Board's authority to "adjust" the WCAB's percentage of disability determination by stating that the percentage of disability "shall be as determined by the [WCAB]," with two exceptions. First, the Retirement Board may, "by five affirmative votes," adjust the percentage of disability as determined by the WCAB. (S.F. Charter § A8.598-3.) Second, the retirement allowance must be no less than 50 percent and nor more than 90 percent of the retiree's final compensation. (*Ibid.*)

15

On appeal, the Retirement System ignores the mandatory directives in section A8.598-3 and focuses instead on the nature and scope of its authority to administer the City's retirement system. It contends, for example, that the limitations it would read into section A8.598-3 are appropriate if not necessary because authorizing the WCAB to award a disability retirement pension for any and all injuries that are compensable under the state's workers' compensation system is inconsistent with provisions of the S.F. Charter which establish that the Retirement Board has "plenary" authority with respect to the administration of the City's disability retirement system. (See S.F. Charter §§ 12.100 and 12.103.)

Our interpretation of section A8.598-3 does not *authorize* the WCAB to award pension benefits. Indeed, the WCAB's procedure is not at issue in this case. However, section A8.598-3, which is part of the same Charter from which the Retirement Board claims its plenary authority, expressly requires the Retirement System to use the WCAB's determination regarding the retired employee's "percentage of disability" in order to calculate the retiree's pension allowance.

The Retirement System also makes the related argument that section A8.598-3 should not, and indeed cannot, properly be interpreted as supplanting the S.F. Charter's disability retirement standards with substantive workers' compensation law standards. It emphasizes that the criteria for awarding workers' compensation benefits are very different than the eligibility requirements for a disability retirement, and it envisions a panoply of unfair situations in which an injured employee who meets the less exacting requirements for workers' compensation will attempt to bootstrap his way into a lucrative disability retirement.

First, many of the Retirement System's factual worries are inapposite because the section A8.598-3 procedure does not arise until after the disability retirement determination has been resolved in favor of the disabled employee. Second, we understand and appreciate that "[a]lthough both the Public Employees' Retirement Law and the workers' compensation law are aimed at the same general goals with regard to the welfare of employees and their dependents, they represent distinct legislative

16

schemes.  We may not assume that the provisions of one apply to the other absent a clear indication from the Legislature." (*Pearl v. WCAB* (2001) 26 Cal.4th 189, 197.)  Here, however, we do have a clear indication from the Legislature in the form of section A8.598-3 which requires that the Retirement System use the WCAB's determination for this express purpose.

Furthermore, contrary to the Retirement System's theory on appeal, interpreting section A8.598-3 in accordance with its plain language does not divest the Retirement Board of its "ultimate decision-making authority respecting *both* eligibility for disability retirement and the amount of disability retirement allowances."  As explained above, the Retirement Board retains the authority to "adjust" the WCAB determination, albeit pursuant to the procedure set forth in the S.F. Charter, i.e. "by five affirmative votes" of the members of the Retirement Board.  There is no dispute that the Retirement Board did not take that action.  However, at oral argument before this court, counsel for the Retirement System suggested that its Pension Adjustment Policy is the functional equivalent of the provision in section A8.598-3 which authorizes the Retirement Board to adjust the WCAB's percentage of disability determination.  We disagree.

As reflected in our factual summary, the proceeding before ALJ Benjamin was conducted pursuant to the Retirement Board's Pension Adjustment Policy.  The text of that written policy suggests that its purpose is to account for the time lag between the conclusion of a disability retirement proceeding and resolution of the related WCAB claim.  Thus, as a purely factual matter, the adjustment that is being made is to the temporary retirement allowance set by the Retirement System, not to the WCAB determination regarding the retiree's percentage of disability.  Furthermore, in our view, this Pension Adjustment Policy could not properly be used for this latter purpose without running afoul of section A8.598-3, which expressly sets forth the grounds upon which the

17

Retirement Board may adjust the WCAB's determination and the procedure for making that adjustment.[6]

## C.   *Estoppel*

The Retirement System's secondary argument is that the trial court erred by holding that the stipulation in the WCAB proceeding was binding on the Retirement Board. According to this theory, the stipulation that the City's Department of Human Resources entered into "for workers' compensation purposes, regarding *all* of respondent's claimed disabilities" may have been binding on the City, but it was not binding on the Retirement Board solely by virtue of the fact that the Retirement System and the Department of Human Resources are both City agencies.

However, the superior court did not hold or intimate that the Retirement Board was bound by the stipulation in the workers' compensation proceeding because of its inter-agency relationship to the City. Rather, the Retirement System was bound by that stipulation because it was approved and adopted by the WCAB and, therefore, became the WCAB's determination regarding the "percentage of disability" for purposes of applying section A8.598-3 of the S.F. Charter.

The Retirement System mistakenly relies on *Geoghegan, supra,* 222 Cal.App.3d 1525. That case involved a San Francisco firefighter who applied for industrial disability retirement after suffering a heart attack while on a ski trip. However, the plaintiff's cardiologist determined that the cold and altitude led to an unusual coronary artery spasm which caused the plaintiff's heart attack. In light of this evidence, the Retirement Board denied the application for disability retirement, the trial court denied plaintiff's petition for writ of mandate and the Court of Appeal affirmed.

---

[6] The propriety of the Pension Adjustment Policy is not at issue on appeal. However, we are concerned that this policy appears to shift the burden onto the retiree to convince the Retirement System to set his retirement allowance to conform to the WCAB's percentage of disability determination.

We also note for the record that there appears to be some merit to Oswald's contention on appeal that the Retirement System and its Board failed to comply with several provisions of the Pension Adjustment Policy in their handling of this case.

The *Geoghegan* court also rejected the plaintiff's argument that the Retirement System was collaterally estopped to deny a WCAB finding that plaintiff's "heart trouble was due to an industrial cause." (*Geoghegan, supra,* 222 Cal.App.3d at p. 1531.) The court found that, although there are some " 'limited circumstances' " under which a WCAB award may collaterally estop an employee's retirement board from relitigating issues previously decided in a WCAB proceeding, most courts decline to give such rulings collateral estoppel effect, "either because of a lack of identity of parties [citation], or because of differences between the nature of the issues considered during a workers' compensation proceeding and the nature of the issues considered by a retirement board proceeding. [citations.]" (*Id*. at p. 1532.) Ultimately, the *Geoghegan* court found that both of these factors supported the conclusion that the Retirement Board was not bound by the WCAB determination that the plaintiff's heart attack was an industrial injury. (*Id*. at pp. 1533-1544.)

*Geoghegan* is both factually and legally inapposite. In that case, the Retirement Board denied an application for industrial disability retirement because it found that the disabling injury was not industrial, and the courts that reviewed that determination concluded that the Board was not required to find otherwise simply because the WCAB had reached a different conclusion on that issue. Here, by contrast, the Retirement Board granted Oswald's application for industrial disability retirement and the "industrial" nature of Oswald's disability is undisputed.

Furthermore, since the *Geoghegan* plaintiff was denied industrial disability retirement, the decision makers in that case had no occasion to address the predecessor to section A8.598-3 of the S.F. Charter which was in effect when that case was decided. Here by contrast, there is no dispute that the calculation of Oswald's pension was governed by section A8.598-3, or that Oswald's writ petition sought to enforce that specific provision of the Charter. And, as we have already demonstrated above, a straightforward application of section A8.598-3 does indeed bind the Retirement System to the WCAB's determination under the facts presented to the superior court in this case.

19

In the end, the Retirement System concedes that "[t]he only sense, in which [the WCAB] stipulation could be said to have any effect on the [Retirement] Board, was through the Charter provision stating that the WCAB's determination of the 'percentage of disability' shall be the percentage used to compute the member's retirement." Despite this concession, the Retirement System insists that the judgment must be reversed because the WCAB's determination of the percentage of disability was 43 percent and the Retirement System was not bound or estopped by the City's stipulation that Oswald also suffered from other permanently disabling conditions. This final argument underscores what we said at the outset of our analysis: This entire appeal is premised on an erroneous factual assumption. We reject the Retirement System's factual claim that the WCAB's determination of the percentage of disability was 43 percent. For purposes of applying section A8.598-3, the WCAB's determination of the percentage of disability was 74 percent. Therefore, Oswald is entitled to an adjustment of his industrial disability pension to reflect that fact.

## IV.  DISPOSITION

The judgment is affirmed.

Haerle, J.

We concur:

Kline, P.J.

Brick, J.*

＊ Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

20