[Civ. No. 46817. First Dist., Div. Three. Oct. 28, 1981.]

KENT D. REYNOLDS, Plaintiff and Appellant, v.
CITY OF SAN CARLOS et al., Defendants and Respondents.

COUNSEL

Hays & Elder and Richard E. Elder, Jr., for Plaintiff and Appellant.

Lagorio, Heneke & Madden, Anthony A. Lagorio and Constance K. Heneke for Defendants and Respondents.

OPINION

**BARRY-DEAL, J.**—Kent D. Reynolds appeals from the judgment of the superior court denying his petition for a writ of mandate pursuant to Code of Civil Procedure section 1094.5. In his petition appellant sought to compel the Civil Service Commission of the City of San Carlos (Commission) to grant his application for service connected disabili-

ty retirement under the Public Employees' Retirement System (PERS), which by contract with the city pursuant to Government Code section 20450 provides retirement benefits to the city's employees.

Appellant, a 32-year-old firefighter, injured his knee on October 16, 1977, while fighting a fire. At the time, he was an employee of the city and a local safety member of PERS. A few months after his injury, appellant was assigned to a temporary, light-duty job while continuing treatment for the disability. Although his treating physician and a consultant recommended surgery on his knee, appellant refused the surgery and applied for permanent disability retirement.

Following an evidentiary hearing on June 8, 1978, the Commission found that appellant suffered an "on-the-job injury to his knee," and that as a result of his injury he is "unable to engage in the usual duties of a fire suppression employee." The Commission denied appellant's application for retirement, however, after also finding, inter alia, that: "11) Because the medical probabilities are great that Firefighter Reynolds will be restored to normal functioning if he submits to surgery, his disability is not permanent.

". . . . . . . . . . . . . .

"14) The recommended medical treatment is the kind of medical treatment to which a reasonable man would submit."

The superior court reviewed the minutes of the Commission's meeting and the evidence introduced and, exercising its independent judgment, affirmed the Commission's denial of appellant's application for retirement. The court found "that the petitioner's refusal of surgery was not reasonable under the circumstances; and that the commission had the jurisdiction, by analogy to the Workmen's Compensation cases . . . to require the petitioner to undergo the recommended surgery."

We find no error and affirm the judgment.

I. *Authority to Determine Permanent Disability*

Appellant first asserts that the Commission was compelled to grant him retirement after finding that an industrial injury rendered him unable to pursue his usual occupation of fire suppression employee.

Although appellant does not challenge the jurisdiction of the Commission to determine that he is disabled, he does challenge their authority to determine that he was not permanently disabled and that he unreasonably refused medical treatment. (See Code Civ. Proc., § 1094.5, subd. (b).)[1] He bolsters his challenge with three overlapping arguments: (A) the Commission, in determining that appellant unreasonably refused surgery, invaded the jurisdiction of the Workers' Compensation Appeals Board (WCAB), which "has exclusive jurisdiction to resolve controversies involving benefits" for work-related injuries under the California Constitution (art. XIV, § 4) and Labor Code sections 5300 and 4056; (B) the WCAB has exclusive jurisdiction under Government Code section 21025.4 and Labor Code sections 4850 and 4851 to determine when a work-related disability becomes permanent; and (C) the Commission lacks jurisdiction under Government Code sections 21020 and 21025 to determine the reasonableness of appellant's refusal to undergo surgery.

Appellant requests this court either to order the Commission to certify to the board of administration of PERS that he is disabled by an industrial injury or to refer the issues of his permanent disability and his refusal to undergo surgery to the WCAB for a determination.

### A.

Appellant's first argument is unpersuasive because he fails to perceive the basic distinction between workers' compensation laws and PERS.

In *Pathe v. City of Bakersfield* (1967) 255 Cal.App.2d 409 [63 Cal. Rptr. 220] the court considered the claim of the city and the city's pension board that the Industrial Accident Commission (now the WCAB) had exclusive jurisdiction under the Constitution and Labor Code section 5300 to determine whether an employee's injury was service-connected. The reasoning of the *Pathe* court in rejecting this argument is applicable to the case before us. The two systems were distinguished: "It is indisputable that the Industrial Accident Commission and the pension board exist for entirely different reasons and were established to attain wholly independent objectives. The Industrial Accident Com-

---

[1] A claim that the Commission proceeded without or in excess of its jurisdiction may be made at any time, and "failure to object at the administrative hearing does not constitute a waiver." (See Cal. Administrative Mandamus (Cont.Ed.Bar 1966) § 5.2, p. 36; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 280, p. 4269.)

mission exists primarily to adjudicate workmen's compensation claims under the general laws adopted by the Legislature pursuant to the Constitution. Its main objective, therefore, is to carry out the legislative scheme which is to provide adequate compensation for employees, public or private, who are injured in the course and scope of their employment while such employees are disabled and incapable of earning a living. On the other hand, the pension board is concerned only with the retirement of a limited class of public employees under a retirement system which was adopted primarily for the betterment of city government. Its objective is not only to recognize the public obligation to certain employees who after long and faithful service become incapacitated by age or physical disabilities, but it is also to make certain that these employees will be replaced by more capable employees for the betterment of the public service without undue hardship on the employees removed [citation]." (*Id.*, at pp. 414-415; see also Gov. Code, § 20001.) The court concluded that the retirement system "does not affect, abrogate or modify the Workmen's Compensation Laws in any manner. To the contrary, it grants additional compensation benefits to employees who are compelled to retire for service-connected disabilities and to this extent it is in harmony rather than in conflict with the Workmen's Compensation Laws of the Labor Code." (*Id.*, at p. 416.)

Although the workers' compensation law (Lab. Code, § 3200 et seq.) and the Public Employees' Retirement Law (Gov. Code, §§ 20000-21500) are not coordinated in all respects and are administered by independent boards, it is clear that they supplement each other. The jurisdiction of the WCAB "is exclusive only in relation to its own objectives and purposes and at the very most overlaps the subject matter jurisdiction of the pension board on a single issue of fact only, the issue as to whether an injury or disability is service-connected. Thus, it is also manifest that the pension board does not lose its inherent power to retire a city employee who 'is physically or mentally incapacitated for the performance of duty' simply because the employee" may also be eligible for workers' compensation benefits. (*Pathe* v. *City of Bakersfield, supra*, 255 Cal.App.2d at p. 415.)

Appellant argues that only the WCAB can make a finding under Labor Code section 4056, incorporating a substantive rule of tort law, which provides: "No compensation is payable in case of the death or disability of an employee when his death is caused, or when and so far as his disability is caused, continued, or aggravated, by an unreasonable refusal to submit to medical treatment, or to any surgical treatment, if

the risk of the treatment is, in the opinion of the appeals board, based upon expert medical or surgical advice, inconsiderable in view of the seriousness of the injury."

██ It is true that there is no comparable provision in the Public Employees' Retirement Law, but, as we have seen, neither the Constitution nor the Labor Code restricts a retirement board, here the Commission, from exercising its authority to determine eligibility for retirement under PERS. The Commission can apply workers' compensation laws by analogy when making a finding of eligibility or noneligibility. (See *Heaton* v. *Marin County Employees Retirement Bd.* (1976) 63 Cal. App.3d 421, 428 [133 Cal.Rptr. 809], and discussion below.)

B.

Appellant next argues that Labor Code sections 4850 and 4851 and Government Code section 21025.4 vest in the WCAB the exclusive jurisdiction to determine when an industrial disability becomes permanent.

Appellant misreads the code sections. Labor Code section 4850, a workers' compensation provision, gives to a local safety member disabled in the course of his employment a benefit not afforded to injured workers generally. Section 4850 provides in pertinent part: "Whenever any ... city fireman ... who is a member of the Public Employees' Retirement System ... is disabled, whether temporarily or permanently, by injury or illness arising out of and in the course of his duties, he shall become entitled, regardless of his period of service with the city ..., to leave of absence while so disabled without loss of salary, in lieu of temporary disability payments, if any, which would be payable under this chapter, for the period of such disability but not exceeding one year, or until such earlier date as he is retired on permanent disability ...." Payments pursuant to section 4850 are not salary but workers' compensation benefits. (*Boyd* v. *City of Santa Ana* (1971) 6 Cal.3d 393, 397 [99 Cal.Rptr. 38, 491 P.2d 830].)

Labor Code section 4851 provides that the governing body of a local agency, "in addition to anyone else properly entitled," including PERS, *may* request the WCAB to determine whether the disability under section 4850 was industrially caused, and the WCAB shall make such a determination. Thus, the fact finding body for PERS has discretion to refer the issue of causation, and if it does so, the WCAB must make the

determination. (See Gov. Code, § 14.) In a disputed case, the WCAB must also determine when the disability commenced and ceased and the compensation benefits to which the employee is entitled under section 4850. (See, generally, Cal. Workmen's Compensation Practice (Cont. Ed.Bar 1973) § 3.39, pp. 88-89; *id.* (Cont.Ed.Bar Supp. 1981) pp. 35-36.)

Government Code section 21025.4 sets the effective date of a disability retirement of a local safety member under PERS as the date upon which his section 4850 benefits expire (one year) or he is found permanent and stationary by the WCAB, whichever first occurs. ■ A finding by the WCAB of permanent disability, which may be partial for the purposes of workers' compensation, does not bind the retirement board on the issue of the employee's incapacity to perform his duties. (See Gov. Code, § 21025; cf. *Harmon* v. *Board of Retirement* (1976) 62 Cal.App.3d 689, 697 [133 Cal.Rptr. 154].) At the most a judgment of the WCAB is res judicata and binding on PERS only "where: (1) the identical issue is under consideration; (2) a final judgment was reached on the merits in the earlier adjudication; (3) the party against whom that judgment is now asserted was a party or in privity with a party in the prior action." (*Summerford* v. *Board of Retirement* (1977) 72 Cal.App.3d 128, 130 [139 Cal.Rptr. 814].)

### C.

■ Appellant next argues that the Commission had no authority under Government Code sections 21020 and 21025 to apply the workers' compensation provision in Labor Code section 4056 in determining permanent disability for retirement under PERS. This argument has no merit.

Although management and control of PERS is vested in the PERS board, which may make such rules as it deems proper (Gov. Code, §§ 20103, 20120), the Legislature has provided that the governing body of a contracting agency employing a local safety member shall determine whether such an employee has become incapacitated physically or mentally for the performance of his or her duties and is eligible to retire for disability. (Gov. Code, §§ 21025, 21024.) The governing body of a contracting agency may delegate such authority to a subordinate officer (Gov. Code, § 21034), and in the case before us the Civil Service Commission of the City of San Carlos performs such duties.

The Commission thus has authority to determine whether a local safety member is eligible for disability retirement under PERS. (Gov. Code, §§ 21024, 21025.) If causation of the disability is disputed, the WCAB shall determine whether the disability was industrial, but jurisdiction of the WCAB "shall be limited solely to the issue of industrial causation . . . ." (Gov. Code, § 21026.) Where, as in the case before us, causation is not disputed, the Commission must find only whether the employee is "incapacitated physically or mentally for the performance of his duties" and is eligible to retire for disability. Government Code section 21020 provides that "'disability' and 'incapacity for performance of duty' as a basis for retirement, mean disability of permanent or extended and uncertain duration, as determined by the board, or in the case of a local safety member by the governing body of the contracting agency employing such member, on the basis of competent medical opinion."

The Commission found that appellant's disability was not permanent because the "probabilities are great that [he] will be restored to normal functioning if he submits to surgery . . . ." In making this finding, the Commission relied on Labor Code section 4056 (see part A above), which denies workers' compensation benefits if an injured employee unreasonably refuses recommended medical treatment. Section 4056 merely codifies the common law rule requiring mitigation of damages (4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 870, p. 3158), which is properly applied in determining eligibility for disability retirement. The Commission has inherent power under Government Code section 21025 to determine whether a claimant has undergone the medical treatment that reasonably could be expected to effect a cure.

As previously discussed, the Commission also has the authority to apply workers' compensation law by analogy. (See *Heaton v. Marin County Employees Retirement Bd., supra,* 63 Cal.App.3d at pp. 427-428.)

Appellant argues that any doubt about application of the condition contained in Labor Code section 4850 must be resolved in his favor, since pension laws are to be liberally construed. We do not agree that the doctrine of liberal construction precludes the Commission from applying the common sense rule that appellant is not permanently disabled when he unreasonably refuses remedial surgery. As stated in *Mansperger v. Public Employees' Retirement System* (1970) 6 Cal. App.3d 873 [86 Cal.Rptr. 450], "The object of the disability allowance

is not solely to compensate a member with a pension. The disability retirement allowance has as its objective the effecting of efficiency and economy in public service by replacement of employees, without hardship or prejudice, who have become superannuated or otherwise incapacitated. (Gov. Code, § 20001.) Therefore, the primary test ... is whether petitioner is substantially incapacitated from the performance of duty, and the rule on liberality of construction does not change that test." (*Id.*, at p. 877.)

In summary, we find that the Commission did not exceed its authority and therefore did not abuse its discretion in determining that appellant was not permanently disabled.

II. *Review of Evidence to Support Commission's Findings*

Appellant contends that even though the Commission had the authority to determine permanent disability, it abused its discretion, in that its findings are not supported by the evidence. (Code Civ. Proc., § 1094.5, subd. (b).)

Where a vested fundamental right is substantially affected by a determination of a legislative agency, the trial court, on an application for a writ of mandate, must review the case under the independent judgment test, i.e., the trial court must determine whether the weight of the evidence supports the agency's findings. (Code Civ. Proc., § 1094.5, subd. (c); see *Dickey* v. *Retirement Board* (1976) 16 Cal.3d 745, 751 [129 Cal.Rptr. 289, 548 P.2d 689].) The trial court in the case before us applied the independent judgment test. On our review of the trial court's judgment, however, we must determine only whether substantial evidence supports the trial court's ruling. (See 5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, § 217, p. 3974; Cal. Administrative Mandamus (Cont.Ed.Bar Supp. 1981) §§ 15.23-15.26, pp. 176-178.)

At the Commission hearing on June 8, 1978, the parties stipulated that appellant's injury was industrially caused, that his injury incapacitated him from performing fire suppression duties, and that the only issues before the Commission were whether appellant had an affirmative duty to seek medical treatment, i.e., surgery on his right knee, and whether in the absence of the surgery the city was obligated to pay him disability retirement. The parties further stipulated that various letters could be introduced into evidence as exhibits. Among those letters were two from John J. Lavorgna, M.D., in the form of medical reports in

which surgery was recommended, and a letter from Bruce G. Horowitz, M.D., also a medical report and recommendation for surgery.

Appellant testified on his own behalf that Dr. Horowitz had presented him with three possibilities if he underwent surgery: "1) If things went right and they opened it [the knee] up and found something, it would be corrected and he would be completely recovered; 2) If they opened it up and found nothing, he would remain the same; 3) there could be some damage by opening it up and then he could be worse." He stated the doctor did not give him any percentage; he gave all three equal weight. Appellant stated that "he was not inclined to go for surgery, that he is afraid of it, that he wanted a 100% guarantee for success since it was his body." No doctor had given him such a guarantee. No medical evidence recommending against surgery was introduced.

In rebuttal, the city attorney called Gary W. Schmitz, fire chief for the city, and Lydia Cathers, claims examiner for Gates, McDonald Co., who administer the workers' compensation program for the city. Schmitz testified, without objection, that he had conferred with Dr. Horowitz about appellant's knee condition and that Dr. Horowitz stated that he was about 90 percent sure that appellant's knee injury was a meniscus tear and that appellant's chance for recovery was 98 percent if surgery were performed. Cathers testified, without objection, that she had consulted with Dr. Lavorgna, who advised her that appellant had a 90 percent chance of recovery after surgery.

Based upon the above evidence, the Commission denied appellant's application for retirement after making detailed findings of fact including, inter alia, that appellant's disability was not permanent or of extended and uncertain duration and that the recommended medical treatment is the kind to which a reasonable man would submit.

The hearing before the Commission was tape recorded, and the parties, having lost the tape transcription, stipulated that the clerk's detailed minutes of the meeting, including the exhibits, could be submitted to the superior court at the hearing on the writ. Appellant made no objections in the trial court to the admissibility of evidence at the Commission hearing. (See *Borror* v. *Department of Investment* (1971) 15 Cal.App.3d 531, 537 [92 Cal.Rptr. 525].)

The trial court, having reviewed the record including the Commission's findings, and exercising its independent judgment on the weight of the evidence, denied appellant's petition for a writ.

Appellant now contends that there was no substantial evidence to support the Commission's findings and that the evidence does not meet the requirement of Government Code section 21020 that the Commission base its findings on "competent medical opinion." He does not assert that the testimony of Fire Chief Schmitz or Claims Examiner Cathers about their conversations with the physicians was inadmissible, but he does urge that they were lay people who were not competent to give a medical opinion and therefore their testimony was not substantial evidence. He points out that percentage of success was not contained in the body of any three of the letters from physicians.

The board of administration of PERS (and impliedly the governing body of a contracting agency) is subject to the Administrative Procedures Act (APA). (Gov. Code, § 11501; see, generally, Witkin, Cal. Evidence (2d ed. 1966) § 21 et seq., p. 22 et seq.) Section 11513, subdivision (c) of the act provides that "The hearing need not be conducted according to technical rules relating to evidence and witnesses.... Hearsay evidence may be used for the purpose of supplementing or explaining other evidence but shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions...."

In his March 13, 1978, letter to Ms. Cathers, Dr. Lavorgna stated: "I would recommend at this time a repeat knee arthrogram with suspicion for a medial meniscus tear, if indeed this is present on the arthrogram, I would do a medial maniscectomy if the arthrogram is unrevealing, I would perform an arthroscopy and surgery as indicated. I would not delay this treatment since regaining range of motion of the knee may be difficult if more time is taken." In his March 20, 1978, letter to Ms. Cathers, Dr. Lavorgna stated: "The patient was advised to have a knee arthroscopy done...." Dr. Horowitz, in a letter to Ms. Cathers on April 10, 1978, indicated that it was his personal advice to appellant that he should proceed with surgery.

The letters from Dr. Lavorgna and Dr. Horowitz, admitted into evidence by stipulation, were substantial evidence to support the trial court's findings. The testimony of Fire Chief Schmitz and Claims Examiner Cathers merely supplemented and explained the medical opinions of the two physicians.

There was substantial evidence to support the trial court's findings, and the court did not abuse its discretion in denying appellant's petition for a writ of mandate.

The judgment is affirmed.

White, P. J., and Feinberg, J., concurred.