Filed 12/3/25; Certified for Publication 12/29/25 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| ALBERTO MENDOZA,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>BOARD OF RETIREMENT OF THE VENTURA COUNTY EMPLOYEES' RETIREMENT ASSOCIATION,<br><br>    Defendant and Respondent.<br><br><br>COUNTY OF VENTURA/RISK MANAGEMENT,<br><br>    Intervener and Respondent. | 2d Civ. No. B327347<br>(Super. Ct. No. 56-2021-00550840-CU-WM-VTA)<br>(Ventura County) |

 Alberto Mendoza appeals the trial court's denial of his petition for a writ of administrative mandate challenging the decision of respondent Board of Retirement of the Ventura

County Employees Association (the Board) to deny his application for a service-connected disability retirement based on two work-related back injuries. (Code Civ. Proc., § 1094.5; Gov. Code, §§ 31720-31752.) In denying the petition, the court agreed with the Board's finding that appellant's disability was a result of his unreasonable refusal to undergo recommended medical treatment for his injuries, as contemplated in *Reynolds v. City of San Carlos* (1981) 126 Cal.App.3d 208 (*Reynolds*) and Labor Code[1] section 4056. Appellant contends the court misapplied the law and that the evidence does not support the finding he unreasonably refused recommended medical treatment. We affirm.

*Facts And Procedural History*

In 2012, appellant began employment as a Ventura County Deputy Sheriff and was assigned to the Todd Road Jail Facility. On December 30, 2014, appellant was working at the facility when he slipped while going up stairs, "which caused discomfort in [his] lower back." On May 27, 2015, he suffered another injury to his back when an inmate he was attempting to subdue, kicked him in the right waist area.

On May 20, 2015, appellant underwent a magnetic resonance imaging (MRI) of his lumbar spine. The MRI film showed degenerative disc disease at the L5-S1 level and a disc herniation abutting the right S1 nerve root. Some of the soft jelly material (the nucleus pulposus) also extruded from the disc at the L5-S1 level and was abutting the right S1 nerve root.

---

[1] Undesignated statutory references are to the Labor Code unless otherwise stated.

On June 19, 2015, appellant was examined by Dr. Robert H. Fields, M.D., the State Panel Qualified Medical Evaluator (QME) in appellant's workers' compensation case. (See § 4062.2.) Dr. Fields recommended that appellant be referred to a spine specialist and stated there was a "[h]igh likelihood [appellant] will require surgical intervention at this level and if deemed necessary, should be provided with care without delay."

Appellant was subsequently evaluated by Dr. Brian Grossman, an orthopedic surgeon. Dr. Grossman initially recommended physical therapy and an epidural injection. In a November 2015 report, Dr. Grossman stated: "I had a long discussion with [appellant] regarding treatment options. . . . He has failed to improve with rest, physical therapy, anti-inflammatory and analgesic medications, physical therapy, and an epidural injection. . . . His prognosis for resolution of symptoms with continued nonsurgical care is guarded. At this point, I believe that he is reaching Maximal Medical Improvement. The patient was advised that surgery for his condition would entail a microscopic discectomy. He does not wish to pursue surgery as he knows at least two people in his department who have had surgery on their back and never returned to their usual job."

On November 17, 2015, appellant's treating physician, Dr. Sam Bakshian, M.D., issued an evaluation report with a request for authorization of treatment. Dr. Bakshian stated: "Clearly, the patient has had marked aggravation of his back and leg symptoms following [an] epidural injection. . . . At this point, I am concerned that the disc extrusion may have displaced. There is no question in my mind that the patient will require surgical intervention and I am formally requesting authorization for a

3

hemilaminectomy microdiscectomy right side L5-S1. . . . The patient does understand."

The requested surgery was authorized by the County of Ventura (the County), but appellant declined to undergo the procedure. On May 25, 2016, appellant filed an application with the Ventura County Employees' Retirement Association (VCERA) for a service-connected disability retirement. After the County notified VCERA of its intent to challenge the application, VCERA informed appellant it was assigning the application to its hearing officer for an administrative hearing. A second MRI of appellant's spine was conducted on December 9, 2015.

In a July 2016 reevaluation report, Dr. Fields indicated that "[t]he patient states he is worse" and "was indicated for surgery, but deferred. I had a long discussion with him about this, and he is just simply scared and this is based on what I believe to be bad information. He asked his friends, and looked on the internet for results. [¶] Looking at his exam and his gait, this patient is in need of surgery." Dr. Fields added: "This patient should go ahead with surgery. I told him I am not his doctor and I generally don't like to make recommendations to my QME patients, but I have seen him before and I advised that I don't see him getting better without surgery. [¶] He has failed epidural blocks and oral steroids in the past, and he is a young man. I think he should reconsider. [¶] In my opinion, he has seen two qualified doctors, both of which are more than capable of making him better, and with the information I have to date, I would expect his results would be good to excellent in the 90% range."

In a supplemental report, Dr. Fields stated: "I am now asked if the patient is in need of surgery, should the patient

4

reconsider his refusal? My answer is 'yes,' as I stated in my report. I indicated that I would expect his results to be good and excellent in the 90% range. [¶] For an isolated disc for a one-sided discectomy and laminectomy, the average good and excellent results are 90%. So, one would consider that he would fit this profile as he is a healthy young man without significant risk factors. [¶] I was asked whether I would agree that the risk of this surgery is inconsiderable in view of the seriousness of the injury. All lumbar surgeries have risks . . . . [¶] However, I think the risk-benefit ratio is highly in the patient's favor. [¶] Also, I think the patient would have good to excellent results, meaning he could go back to work probably without restriction or with limited restrictions after surgery."

Appellant continued to decline to undergo the authorized surgery. On June 9, 2017, appellant underwent a third MRI. In a June 28, 2017 report, Dr. Bakshian stated: "I have compared his 2015 MRI with the current MRI which clearly demonstrates progression of the discopathy at L5-S1. As I previously suspected, his pain syndrome is not only related to the disc herniation (and notable extrusion) at the L5-S1 level, but also secondary to the disfunction [*sic*] of the disc itself. . . . [¶] At this point, in order to address both back pain and leg pain in this individual, he will require a spinal fusion at L5-S1 with a decompression exploration of the nerve root and neurolysis as necessary. Alternatively, if the patient is prepared to consider, a laminectomy discectomy and neurolysis at L5-S1 can be performed which will invariably help with his radiculopathic pain, however, unlikely to help with his mechanical pain. In either case, I don't believe that it would be safe for the patient to return back to perform his duties as a Deputy Sheriff[.]"

In a July 2017 progress report and request for authorization, Dr. Bakshian opined that appellant's continuing pain was due to "a combination of annular tearing, disc protrusion and scar formation around the right L5 and S1 nerve root." Based on the progression of appellant's condition, Dr. Bakshian sought authorization for a laminoforaminotomy discectomy, rather than the hemilaminectomy microdiscectomy that had previously been approved. Dr. Bakshian also noted that "[t]he patient expresses [that] he wishe[s] to proceed with surgery."

Dr. Bakshian's request for a laminoforaminotomy and discectomy at the County's expense was denied following utilization review. (See §§ 4610, subd. (a), 5307.27.) The request was denied due to "insufficient current objective medical evidence in the record to support the necessity of surgical intervention." In a November 2017 report, Dr. Bakshian stated: "At this point, the patient does have a deposition pending. Hopefully, this will resolve the issues as he does need surgical intervention. I have discussed with him options for surgical intervention; however, the patient does understand that with surgery, there's no guarantee of full recovery which in all likelihood he will not be able to return back to his current employment. The patient does understand. He needs some time to think about his options. He will contact me in the next four to six weeks to check in on status."

On March 15, 2018, appellant was examined by Dr. Richard Rosenberg, M.D., an orthopedic surgeon. In his report, Dr. Rosenberg stated that "[b]ased on my review of [appellant's] records, at one point he was a candidate for surgery, although, with the passage of time, his condition has improved to the point

6

where I would no longer consider him a candidate for surgery." Dr. Rosenberg opined that "[b]ased on the Job Analysis for a Deputy Sheriff, [appellant] would be precluded from rare or infrequent lifting of 50 to 100 pounds. He would certainly be precluded from lifting over 100 pounds. In my opinion, [appellant] is currently able to carry out the remainder of the job duties that are described in the Job Analysis." The doctor also noted that "a home exercise program would be advisable for him and, with this program, additional improvement in his lower back condition can be expected."

In a November 2018 progress report, Dr. Bakshian stated that appellant still reported "constant" pain but was "not interested in surgery currently" and "would like to postpone that to a future date." Dr. Bakshian added that appellant "was advised to continue with his home exercise program to increase functionality and mobility. Once he changes his mind regarding surgery for lumbar spine he will notify us."

After reevaluating appellant in January 2019, Dr. Rosenberg reported that appellant was "not doing a home exercise program because the pain in his back increased around August of 2018." Dr. Rosenberg concluded that appellant "has lost . . . less than 5% of his preinjury lifting capacity" and "would benefit for a work hardening program [i.e., a physical therapy and conditioning program designed to return an employee to work] for his low back to increase his ability for lifting and potentially returning back to work as a deputy sheriff."

The administrative hearing on appellant's application for a service-connected disability retirement was held on December 12, 2019. Appellant testified on his own behalf and did not call any other witnesses. Appellant testified among other things that he

7

had declined to undergo the authorized surgery because his initial symptom of urinary incontinence had resolved and he "believe[d] that [his] body was getting better."  Appellant also had "[m]ultiple concerns" because "[y]ou don't know the outcome of the surgery."  He disagreed with Dr. Rosenberg's conclusion that he had only lost 5 percent of his lifting capacity.  On cross-examination, he reiterated that he elected not to undergo the surgery recommended by Drs. Bakshian, Grossman, and Fields "because the urinary incontinence [had] stopped."  He denied that Dr. Fields told him he would likely be able to return to work if he underwent the surgery.  He declined to undergo the work hardening program recommended by Dr. Rosenberg because he "didn't see any medical benefit to it" and "when [he tries] to do the exercises that Dr. Bakshian recommends, it hurts, the pain increases."

The County called radiologist Stephen Rothman, M.D., and Tracey Pirie, the Sheriff's Bureau Manager.  Dr. Rothman essentially testified that there was no indication of spinal nerve compression in appellant's June 9, 2017 MRI results.  Pirie testified that the Sheriff's Department could "probably" accommodate the restrictions imposed by Dr. Rosenberg if appellant returned to work.

At the conclusion of the hearing, the record was left open to allow appellant to present an additional report from Dr. Bakshian.  In a May 2020 supplemental report, Dr. Bakshian stated that he agreed with Dr. Rothman's conclusion that the disc extrusion at L5-S1 had been resolved.  Dr Bakshian disagreed, however, that this meant "there is essentially nothing wrong with the patient's back."  Dr. Bakshian "noted that the patient does have fairly significant disc height loss at L5-S1 and a large area

8

of high intensity signal within the annulus at L5-S1," which "signifies that the internal structure of the disc is no longer properly functioning and that represents discopathy at the L5-S1 level." The doctor added that "[b]y virtue of there being a disc extrusion at the L5-S1 level signifies that a portion of the disc annulus tore and that the central disc material (nucleus pulposus) extruded through the annulus[.]" Dr. Bakshian opined that "[i]nitially, a decompression and discectomy would have been a viable option. At this point, it is my opinion that not only a decompressive procedure is required but also a neurolysis and likely a spinal fusion at the L5-S1 level."

On October 22, 2020, the hearing officer issued his proposed findings of fact and recommended decision denying appellant's application for service-connected disability retirement benefits. The hearing officer found that "Applicant refused to undergo reasonable and appropriate medical treatment that had a high probability of success (90 percent according to Dr. Fields), and which could have permitted Applicant to go back to work. He refused surgery despite the recommendations of three physicians . . . . By refusing to undergo surgery when it was initially authorized, Applicant might very well have made his condition worse because according to Dr. Bakshian, 'at this point Applicant [*sic*] not only requires decompressive procedure, he also requires a neurolysis and possibly a fusion.["] [Citation.] In addition, Applicant made a unilateral decision [to] stop the home exercise program that was recommended and encouraged by Dr. Bakshian. Finally, Applicant refused to participate in the Work Hardening Program that was recommended by Dr. Rosenberg and offered to Applicant by the County of Ventura." The hearing officer also found that "Applicant's testimony that he declined to

9

go forward with the surgery because his incontinence had abated is not credible because Applicant continued to complain of constant pain . . . even after he no longer had incontinence." The hearing officer concluded that appellant was thus not entitled to service-related disability retirement benefits, as contemplated in *Reynolds*, *supra*, 126 Cal.App.3d 208. The Board subsequently adopted the hearing officer's proposed decision and accordingly denied appellant's application for service-connected disability retirement benefits.

Appellant petitioned for a writ of administrative mandate. In its ruling denying the petition, the court reasoned: "The determinative factor in all of this from the Court's perspective is [appellant's] refusal to consent to surgery in 2016, and the consequences of that decision as discussed in *Reynolds* . . . . In 2015 and 2016, [appellant] was evaluated by Drs. Bakshian and Fields[,] both of whom concluded that [appellant] needed surgery for his back problem. Dr. Fields was particularly emphatic about the need for surgery and its probable good-excellent result. To be sure, no surgery is without risk, but both Dr. Bakshian (a treating physician) and Dr. Fields (an evaluating physician) are very firm in stating that this was the needed treatment. . . . What probably could have been fixed in 2015 or 2016 by surgery had worsened by 2017. The surgery recommended in 2017 was of a different type, and one which likely would not have resolved [appellant's] injury such that he could return to work. His decision in 2015 and 2016 to refuse the treatment which probably would have allowed him to return to work is a sufficient basis to deny this Petition."

10

*Discussion*

Appellant contends the trial court's decision to deny his administrative writ petition based on the finding that he unreasonably refused medical treatment misapplies the law and is in any event not supported by substantial evidence. We conclude otherwise.

Under the County Employees Retirement Law of 1937, an employee is entitled to disability retirement benefits if he or she is "permanently incapacitated" physically or mentally from the performance of his or her duties. (Gov. Code, § 31720.) In order to qualify for a service-connected disability retirement, the applicant's permanent incapacity must be "a result of injury or disease arising out of and in the course of the member's employment, and such employment contributes substantially to such incapacity. . . ." (*Id.*, subd. (a).)

Because "employees have a fundamental vested right in their retirement benefits" (*County of Alameda v. Board of Retirement* (1988) 46 Cal.3d 902, 915), in adjudicating appellant's writ petition the trial court was required to exercise its independent judgment to decide whether benefits were properly denied. (*Valero v. Board of Retirement of Tulare County Employees' Assn.* (2012) 205 Cal.App.4th 960, 965 (*Valero*).) In exercising its independent judgment in this regard, "a trial court must afford a strong presumption of correctness concerning the administrative findings, and the party challenging the administrative decision bears the burden of convincing the court that the administrative findings are contrary to the weight of the evidence." (*Fukuda v. City of Angels* (1999) 20 Cal.4th 809, 817 (*Fukuda*).)

11

"'After the trial court has exercised its independent judgment in weighing the evidence, our task is to review the record to determine whether the trial court's findings are supported by substantial evidence. [Citation.] The trial court's decision should be sustained if it is supported by credible and competent evidence. [Citation.]'" (*Valero, supra,* 205 Cal.App.4th at p. 965.) Under these circumstances, "'the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." [Citation.]'. [Citation.]" (*Id.,* at p. 966)

The trial court denied appellant's writ petition based on the common law doctrine of avoidable consequences/mitigation of damages, as set forth in *Reynolds* and section 4056. Pursuant to that doctrine, an application for service-connected disability retirement benefits is properly denied if the applicant's disability is caused, continued, or aggravated by their unreasonable refusal to undergo medical treatment for their injuries. (*Reynolds, supra,* 126 Cal.App.3d at p. 216, citing § 4056[2]; see also *State*

---

[2] Section 4056 states: "No compensation is payable in the case of the death or disability of an employee when [the] death is caused, or when and so far as his disability is caused, continued, or aggravated, by an unreasonable refusal to submit to medical treatment, or to any surgical treatment, if the risk of the treatment is, in the opinion of the appeals board, based upon expert medical or surgical advice, inconsiderable in view of the seriousness of the injury." Although section 4056 is a workers' compensation provision, the statute "merely codifies the common

12

*Dept. of Health Services v. Superior Court* (2003) 31 Cal.4th 1026, 1047, discussing § 4056 (*State Dept. of Health Services*).) The purpose of applying the doctrine in this context "is to prevent employees with treatable injuries from resorting to unfounded beliefs, ungrounded fears or personal idiosyncrasies or convictions to reject proffered treatment. [Citation.]" (*Flores v. Workmen's Comp. Appeals Bd.* (1973) 36 Cal.App.3d 388, 392-393.)

Appellant contends the court erred in relying on the doctrine of avoidable consequences/mitigation of damages as set forth in *Reynolds* and section 4056 because in *Reynolds* it was deemed likely that the employee could still return to work if he underwent the surgery he had unreasonably refused. (*Reynolds, supra*, 126 Cal.App.3d at p. 218.) He asserts that the doctrine cannot be applied to him because it is essentially undisputed that the initial surgery he refused to undergo would no longer be effective and that the surgeries Dr. Bakshian subsequently recommended would not enable him to perform all of the duties of his job as a Deputy Sheriff.

We are not persuaded. The doctrine of avoidable consequences/mitigation of damages logically applies not only when it is likely that the employee could still return to work by undergoing recommended medical treatment, but also when it is likely the employee could have returned to work but for their unreasonable refusal to timely submit to treatment that may no longer be effective due to the passage of time. Under the latter

law rule requiring mitigation of damages [citation], which is properly applied in determining eligibility for disability retirement." (*Reynolds, supra*, 126 Cal.App.3d at p. 216.)

13

scenario, a retirement board can reasonably find that the employee's inability to return to work is not a result of their work-related injury, but rather a result of their unreasonable refusal to submit to medical treatment for that injury. (Gov. Code, § 31720, subd. (a); § 4056.)

Moreover, appellant cannot be heard to complain the evidence does not support the court's findings that he unreasonably refused to undergo the hemilaminectomy microdiscectomy that was approved in November 2015, and that he probably would have been able to return to work had he undergone that surgery. His opening brief does not set forth any of the evidence favorable to those findings. Most notably, he fails to mention that Drs. Bakshian, Fields, and Grossman all recommended that he undergo the surgery, or that Dr. Fields had also opined that appellant would probably be able to return to work if he did so. We agree with the Board that appellant thus forfeited his claim of insufficient evidence. (*Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 409-410.)

In any event, the evidence on this issue does not compel a finding in appellant's favor as a matter of law. (*Valero*, *supra*, 205 Cal.App.4th at p. 966.) Although appellant refers us to Dr. Bakshian's deposition testimony that his refusal of the recommended surgery was not unreasonable, that testimony plainly conflicts with the doctor's statement in his November 2015 evaluation report that "[t]here is no question in my mind that the patient will require surgical intervention[.]" Dr. Bakshian's deposition testimony on this issue is also contradicted by the opinions of Dr. Fields that appellant was likely to be able to return to work if he underwent the approved

14

surgery and that the risks of that surgery were outweighed by the benefits.

Moreover, in issuing its ruling the trial court was required to presume the correctness of the findings underlying the Board's decision. (*Fukuda*, *supra*, 20 Cal.4th at p. 817.) Although the court focused on appellant's refusal to undergo the approved surgery, the Board also found appellant (1) had unreasonably refused to participate in the work hardening program; (2) had unreasonably stopped performing the home exercise program recommended by Dr. Bakshian; and (3) "requires further medical care and treatment." Because substantial evidence supports these findings, appellant fails to establish that his writ petition was erroneously denied.

### Disposition

The trial court's order denying appellant's petition for a writ of administrative mandate is affirmed. Respondents shall recover costs on appeal.

YEGAN, Acting P. J.

We concur:

BALTODANO, J.

CODY, J.

15

Henry J. Walsh, Judge
Superior Court County of Ventura
_____

Law Office of Steven R. Rosales and Steven R. Rosales, for Plaintiff and Appellant.

Board of Retirement of Ventura County Employees' Retirement Association and Lori A. Nemiroff; Law Office of Vivian Shultz and Vivian W. Shults, for Defendant and Respondent.

Law Office of Stephen D. Roberson and Stephen D. Roberson, for Intervener and Respondent.

# CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| ALBERTO MENDOZA,<br>　Plaintiff and Appellant,<br><br>v.<br><br>BOARD OF RETIREMENT OF THE VENTURA COUNTY EMPLOYEES' RETIREMENT ASSOCIATION,<br><br>　Defendant and Respondent.<br><br><br>COUNTY OF VENTURA/RISK MANAGEMENT,<br><br>　Intervener and Respondent. | 2d Civ. No. B327347<br>(Super. Ct. No. 56-2021-00550840-CU-WM-VTA)<br>(Ventura County)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION<br>[NO CHANGE IN JUDGMENT] |

THE COURT:

　　The opinion in the above-entitled matter filed on December 3, 2025, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.

_____

YEGAN, A.P.J.　　　　BALTODANO, J.　　　　CODY, J.